642 So.2d 656 (1994)
Terry Lavon COBB, Appellant,
v.
STATE of Florida, Appellee.
Jamie Morris, Appellant,
v.
State of Florida, Appellee.
Nos. 92-3849, 92-4221.
District Court of Appeal of Florida, First District.
September 16, 1994.
*657 Christopher P. Saxer, of Smith, Grimsley, Bauman, Pinkerton, Petermann, Saxer & Wells, Fort Walton, Beach, for appellant, Cobb.
Nancy A. Daniels, Public Defender, Carl S. McGinnes, Asst. Public Defender, and Chris W. Hoeg, Asst. Public Defender, Tallahassee, for appellant, Morris.
Robert A. Butterworth, Atty. Gen., Patrick Martin, Marilyn McFadden, and Sonya Roebuck Horbelt, Asst. Attys. Gen., Tallahassee.
MICKLE, Judge.
Appellants, Terry Cobb and Jamie Morris, co-defendants in the lower tribunal, both challenge the denial of their motions to suppress evidence. Judgment and sentence was entered for both defendants, and each received a term of imprisonment. Finding a sufficient evidentiary basis for the decisions below, we affirm.
Cobb and Morris were charged with armed robbery relating to an incident that occurred early in the morning on November 12, 1991, at the Tom Thumb Food Store in Baker, Florida, in Okaloosa County. After their motions to suppress were denied, Cobb and Morris agreed to plead nolo contendere and filed essentially identical standard plea forms. At the sentencing hearing, Cobb's attorney verbally informed the trial court that Cobb had entered the plea conditioned on reserving the right to appeal the denial of his motion to suppress. Morris' lawyer announced that his client's plea was subject to the "same conditions." The state did not challenge defense counsel's statements then. Appellants filed timely notices of appeal. We find that the state's arguments challenging appellate jurisdiction are not supported by the record.
The key issue on appeal is the sufficiency of the evidence to support the denial of the motions to suppress. In both cases, sheriff's office dispatcher Margaret Dyer testified that while on duty on November 12, 1991, she dispatched a radio notice at 1:26 A.M. that a "Signal 24" had just occurred at the Tom Thumb Food Store in Baker. The log indicated that Deputy Tyson had arrived at the crime scene at 1:34 A.M. Dyer's initial dispatch reported four suspects in the armed robbery, but sometime within eight minutes she issued a follow-up dispatch stating that three black males were suspects at large.
The state's chief witness in both cases was Crestview police officer Danny Ellis, a 17-year resident of Baker, Florida, with 3 1/2 years of law enforcement experience. Officer Ellis testified that at about 1:26 A.M. on November 12, 1991, he heard the sheriff's office radio dispatch reporting an armed (handgun) robbery involving several black males who had fled on foot. Ellis attested to his knowledge of the area and described the Tom Thumb Food Store as located at the corner of Highway 4 and the Baker-Galliver Cutoff Road in Okaloosa County. The crime site has only three possible roadway escape routes: 1) the cutoff road heading in a westerly direction toward the town of Holt, 2) Highway 4 North leading to the towns of Baker and Munson and eventually reaching the Alabama state line, and 3) Highway 4 South toward the town of Milligan and an *658 intersection with a main thoroughfare, Highway 90, which connects with the city of Crestview to the east.
When he heard the initial dispatch, Officer Ellis was sitting in his patrol car at Highway 90 and Old Bethel Road. Knowing that the immediate vicinity of the crime site is agricultural, without any residential areas close enough to be reached on foot, he surmised that a vehicle located somewhere nearby might be involved. Immediately he drove at a very high speed two miles to a grocery store at a second intersection, Highways 90 and 4 at Milligan, which is the third listed escape route and is situated four miles from the Tom Thumb Food Store.
The officer explained why he chose that location rather than one of the other two potential escape routes:
The Baker area is not heavily populated with blacks. Another way would be the Baker-Galliver Cutoff toward Holt. I've lived in Holt, and I don't know of any blacks that live in Holt. The only other way would be to come down Highway 4 toward Crestview where the biggest population of blacks live.
While traveling to the second intersection, Ellis encountered no vehicular traffic. At 1:28 A.M., Ellis backed up an elevation and engaged his bright headlights so that he could observe any vehicle and subjects that might be approaching in a southerly direction on Highway 4 from the crime site. He stated that during his midnight patrol duties, he has seen hardly any traffic in the mostly rural area. Sometimes he has intercepted only one vehicle during a 3-4-hour period. However, within 1 1/2 minutes of his arrival at the second intersection, Ellis observed the only vehicle, a pickup truck with several black males, approach the intersection from the direction of the food store. It turned left and headed east toward Crestview. The appearance of the truck coincided with what Ellis gauged was the approximate driving time from the vicinity of the crime. After another 1 1/2 minutes passed without Ellis' seeing any other traffic, he decided to catch up with the truck.
The officer explained that for safety and investigative reasons, he used his bright headlights as he approached the moving truck. Initially, he had observed that the pickup carried three or perhaps four black males. As he pulled behind the truck, he determined that it carried three individuals. Two of the occupants were "moving around like they were trying to put stuff underneath the seat bending over. One of them turned around and was looking at me." By that time, Officer Ellis had heard the corrected report of three black male suspects.
Ellis testified that relying on his training and experience, he decided to stop the vehicle at 1:31 A.M., or five minutes after the initial dispatch, along Highway 90 in Crestview about seven miles from the Tom Thumb Food Store. The records establish that Cobb and Morris, who were occupants of the truck, were arrested and charged with armed robbery.
It is well established that under section 901.151, Florida Statutes, to justify a stop or any other temporary detention such as the one at issue here, the state's witness had to point to specific, objective, and articulable observed facts that, considered cumulatively, reasonably indicated that the persons had committed, were committing, or were about to commit a crime. State v. Webb, 398 So.2d 820 (Fla. 1981). We must determine whether Officer Ellis' testimony demonstrates a "founded suspicion," based on his factual observations in light of his experience and knowledge, rather than a "mere suspicion of criminal activity." Walker v. State, 514 So.2d 1149, 1150 (Fla. 2d DCA 1987); Stanton v. State, 576 So.2d 925, 926 (Fla. 1st DCA), rev. den., 584 So.2d 999 (Fla. 1991) (police must have "founded suspicion of criminal activity" before initiating vehicular stop to investigate such activity). "Founded suspicion" need not be sufficiently fact-based to rise to the level of probable cause for arrest, but it must be enough to draw the officer's attention to something more specific than a wide, unparticularized range of potential suspects. Heller v. State, 576 So.2d 398 (Fla. 5th DCA 1991); James v. State, 556 So.2d 791 (Fla. 1st DCA 1990).
As the ruling on a motion to suppress comes clothed with a presumption of correctness, *659 we interpret and rely on the following evidence and reasonable inferences therefrom as sufficient to sustain the decisions below. McNamara v. State, 357 So.2d 410 (Fla. 1978). 1) Officer Ellis heard the report of a crime committed by several black males in a rural, nonresidential area with no likely escape route for foot traffic and three potential vehicular escape roads. 2) From his location on the southerly side of the crime site, he chose to drive to the nearby Highway 90 intersection closer to the most populous city in the area, Crestview, where, he opined, "the biggest population of blacks live." From his 17-year residency in the area, he was familiar with those areas in the vicinity that were more and less likely to have black communities. 3) Vehicular traffic is sparse at that early hour of the morning, and the only vehicle that he saw, a pickup truck, carried several black males. 4) The vehicle was observed in close temporal and geographic proximity to the commission of the crime, and it was approaching from the direction of the Tom Thumb Food Store. 5) No other vehicle appeared, and after the officer drove after the truck, he witnessed a passenger apparently trying to conceal something under the seat. 6) During his approach to the moving vehicle, Ellis heard the corrected report of three black male suspects and saw three black men inside.
In finding a proper basis for denying the motions to suppress, we note especially the significance of the particularized rural setting in which these early-morning events occurred, and Officer Ellis' stated longstanding familiarity with the character of the different locations involved. The time of day, the extent to which a roadway is traveled at that hour, the number of available escape routes, and the temporal and geographical proximity of the location of the stop to the crime site itself are all factors relevant to the determination of whether a founded suspicion existed. Plant v. State, 407 So.2d 966 (Fla. 1st DCA 1981), rev. den., 417 So.2d 330 (Fla. 1982); L.T.S. v. State, 391 So.2d 695, 696 (Fla. 1st DCA 1980); Gibson v. State, 486 So.2d 696 (Fla. 4th DCA 1986).
In support of reversal, Appellants have cited a number of cases involving urban settings or other key factual elements that, considered in isolation from other facts, might have suggested a different result. Our duty, however, is to determine whether, in light of the totality of the circumstances, the cumulative impact of the facts known by Officer Ellis established a founded, articulable suspicion prior to his stopping the truck. McKinnon v. State, 617 So.2d 1141 (Fla. 1st DCA 1993); State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989). Using that standard, we must conclude that the record supports the trial court's decisions. Therefore, we decline to consider dispositive those cases, on which Appellants rely, that focus on just one or a few of the above-listed cumulative factors.
AFFIRMED.
BARFIELD and MINER, JJ., concur.