667 So.2d 343 (1995)
STATE of Florida, Appellant,
v.
David SETZLER, Michael Jones, and Lawrence H. Raker, Appellees.
No. 94-2497.
District Court of Appeal of Florida, First District.
October 24, 1995.
*344 Robert A. Butterworth, Attorney General; Thomas Crapps, Assistant Attorney General, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender; P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellees.
BENTON, Judge.
The State appeals a pretrial order granting appellees' motions to suppress evidence implicating them in a robbery. The police obtained the evidence after stopping the truck in which they were travelling. We conclude that the facts established at the suppression hearing demonstrated a basis for reasonable suspicion justifying an investigative stop by the police, and that information subsequently obtained established probable cause for appellees' arrest and the seizure of property in and under the truck. We reverse on that basis.
As amended, the Florida Constitution requires that the Florida constitutional "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures ... shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. I, § 12, Fla. Const. (1982). This amendment to the Florida Constitution has procedural as well as substantive implications. See generally State v. Lavazzoli, 434 So.2d 321, 322 (Fla. 1983) ("[T]he people of the State of Florida approved an amendment to article I, section 12 of the Florida Constitution, effective January 4, 1983 ... [which] mandated conformity of the interpretation of article I, section 12's exclusionary rule with the United States Supreme Court's interpretation of the fourth amendment to the United States Constitution.").
"Fourth Amendment issues ... are not always finally resolved at the trial level." Wayne R. LaFave, Search and Seizure § 11.7, at 505 (2d ed. 1987). In reviewing search and seizure decisions, Florida courts and federal courts alike must apply different standards of review, depending on the nature of the questions presented. Aspects or components of the trial court's decision resolving legal questions are subject to de novo review, while factual decisions by the trial court are entitled to deference commensurate with the *345 trial judge's superior vantage point for resolving factual disputes.
Special deference may be owed fact finding by a magistrate who has issued a search warrant after finding probable cause. See Massachusetts v. Upton, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984).
[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Spinelli [v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)] ..., 393 U.S., at 419, 89 S.Ct., at 590. "A grudging or negative attitude by reviewing courts toward warrants," [United States v.] Ventresca, [380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)], 380 U.S., at 108, 85 S.Ct., at 745, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." Id., at 109, 85 S.Ct., at 746.
Illinois v. Gates, 462 U.S. 213, 237, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). In the present case, however, neither affidavit nor warrant preceded seizure of the evidence in question.

Burden of Proof at Suppression Hearing
At the hearing on appellees' motion to suppress, once appellees' standing was clear, the absence of a warrant meant the prosecution had the burden to establish that the evidence sought to be suppressed was obtained lawfully. Florida Rule of Criminal Procedure 3.190(h)(3) provides:
If the court hears the motion on its merits, the defendant shall present evidence supporting the defendant's position, and the state may offer rebuttal evidence.
This provision contemplates a hearing on a motion to suppress the fruits of a search pursuant to warrant, and does not fully describe the procedure constitutionally required in the case of unwarranted searches and seizures. When a search warrant has issued, the defense has the burden of going forward, and the burden to establish grounds for suppression.
In the absence of a warrant, however, the defense need make only an "initial showing," State v. Lyons, 293 So.2d 391, 393 (Fla. 2d DCA 1974) at the suppression hearing. Williams v. State, 640 So.2d 1206 (Fla. 2d DCA 1994); State v. Fortesa-Ruiz, 559 So.2d 1180, 1181 (Fla. 3d DCA), review denied, 574 So.2d 143 (1990); Morales v. State, 407 So.2d 321, 325 (Fla. 3d DCA 1981); Black v. State, 383 So.2d 295 (Fla. 1st DCA), review denied, 392 So.2d 1371 (Fla. 1980); Andress v. State, 351 So.2d 350 (Fla. 4th DCA 1977); Pineda v. State, No. 92-06-AP (Fla. 8th Cir. Ct. March 19, 1993). The defense has the burden to prove standing, where standing is at issue. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Jones v. State, 648 So.2d 669, 674-76 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2588, 132 L.Ed.2d 836 (Fla. 1995). See United States v. Padilla, 508 U.S. 77, ___-___, 113 S.Ct. 1936, 1938-39, 123 L.Ed.2d 635 (1993); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Here no real issue as to appellees' standing exists.
Once the defense made its "initial showing," the prosecution had to prove probable cause for (or otherwise explain) the fait accompli at the suppression hearing, because the State did not justify the search before the fact, by showing a judge grounds for issuance of a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Jones, 648 So.2d at 674. As a practical matter, absence of a search warrant in the court file sufficed to shift the burden of going forward to the prosecution. State v. Hinton, 305 So.2d 804, 808 (Fla. 4th DCA 1975); see also State v. Williams, 538 So.2d 1346, 1348 (Fla. 4th DCA 1989). The prosecution also had to demonstrate exigent circumstances, conditions which precluded applying to a neutral and detached magistrate for a search warrant, or some other exception to the warrant requirement. Coolidge; Stoner v. California, *346 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

Procedure on Review
District courts of appeal "may review interlocutory orders in ... [felony prosecutions, among other cases] to the extent provided by rules adopted by the supreme court." Art. V, § 4(b)(1), Fla. Const. (1968). The appellate rules authorize the State to appeal orders "suppressing before trial ... evidence obtained by search and seizure." Fla.R.App.P. 9.140(c)(1)(B). Whatever its efficacy, a statute also recites that the "state may appeal from a pretrial order ... suppressing evidence." § 924.071(1), Fla. Stat. (1993).
A reviewing court is bound by the trial court's findings of fact  even if only implicit  made after a suppression hearing, unless they are clearly erroneous. On the other hand, deference to clearly erroneous findings of fact is not consistent with the review required in Fourth Amendment cases. E.g., United States v. Fernandez, 58 F.3d 593, 596 (11th Cir.1995) ("The denial of a motion to suppress presents a mixed question of law and fact. We must defer to the district court's findings of fact unless clearly erroneous, but we are to review the district court's application of the law to the facts de novo. In reviewing the denial of a motion to suppress, we construe the facts in the light most favorable to the prevailing party below.")

Evidence Adduced
At the suppression hearing, the parties agreed that the motions would be decided on the basis of testimony the officer who made the stop gave on deposition. The learned trial judge made findings of fact:
The stop occurred in the early morning hours after mid-night. It came about because the Jacksonville Sheriff's Office dispatcher put out a BOLO on a cream colored pick-up with three black males leaving the scene of a robbery. The location of the robbery was between one and two and one half miles from the location of the stop. The time of the stop was apparently only a short time after the BOLO.
Considering the totality of the circumstances necessary to support a stop, the downside to this stop is that (1) the time is not clear; (2) the area where the stop took place was not an area of limited access to the scene of the crime; (3) the passengers in the truck were not all black males. (Two were black but the third was white. The officer's explanation was that he thought the BOLO might be in error.) (4) There was nothing about the truck or its equipment that gave rise to any feeling on the part of the officer that a stop was reasonable.
The trial court ruled that neither these facts nor the evidence adduced at the suppression hearing established a legal basis for stopping the truck, arresting appellees, or seizing as evidence a watch, a wallet, and a bicycle.
Officer Bass of the Jacksonville Sheriff's Office testified on deposition that police radio transmitted a "BOLO" (advice to be on the lookout) for three black males in a cream-colored Ford pick-up truck last seen heading west on Baymeadows Road toward San Jose on the night of March 10, 1994. Officer Bass testified that, hearing this, he stopped his patrol car at an intersection "near Old Kings and San Jose" that he believed the suspects might pass through; that he then saw a cream-colored Ford pick-up truck drive by; that he followed the pick-up truck a short distance in his own vehicle; that he determined that three males  two black and one white  occupied the truck; and that he pulled the truck over "to see if they were the suspects." Evidence at the suppression hearing did not indicate the precise time either of the BOLO or of the stop. The State did not establish the exact distance between the stop and the crime scene.
After the driver and at least one of the passengers had gotten out of the truck, Officer Bass asked where they were going, and where had they been. Within a minute of stopping the truck, he called the dispatcher, who told him that the robbers' truck had a bicycle in the truck bed. There were two bicycles (and a silver watch) in the bed of appellees' truck. Officer Bass asked for *347 backup. Shortly thereafter, appellee Jones said something to the effect that he could not afford to go back to jail and started running. Officer Bass gave chase and caught him, however. When another officer brought the robbery victim to the scene, he identified appellees Setzler and Jones as the persons who robbed him. Appellee Raker was also arrested after he threw what turned out to be the victim's wallet underneath the truck.

Reasonable, Particularized Suspicion
Charged with robbery, appellees moved to suppress the physical evidence as well as any testimony recounting the statements appellee Jones had made, on grounds that this evidence was all the product of an illegal stop and detention. The Florida Stop and Frisk Law provides:
(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state ..., he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
(3) No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.
(4) If at any time after the onset of the temporary detention authorized by subsection (2), probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no probable cause for the arrest of the person shall appear, he shall be released.
....
(6) No evidence seized by a law enforcement officer in any search under this section shall be admissible against any person in any court of this state or political subdivision thereof unless the search which disclosed its existence was authorized by and conducted in compliance with the provisions of subsections (2)-(5).
As a matter of law, we conclude that the BOLO coupled with the mode, time, and direction of appellees' travel gave Officer Bass a reasonable indication that appellees were the robbers he had been told to be on the lookout for. Although only two of the three were black, Officer Bass not unreasonably surmised that the BOLO might be in error on that point, events having transpired in the dark of night.
But this does not end our inquiry. This is not a case in which constitutional adjudication can be avoided by statutory construction  although in an appropriate case proper construction of the Florida Stop and Frisk Law might avoid unnecessary constitutional adjudication. See generally State v. Iacovone, 660 So.2d 1371 (Fla. 1995); State v. Mozo, 655 So.2d 1115 (Fla. 1995); Singletary v. State, 322 So.2d 551, 552 (Fla. 1975). Implementing Florida citizens' rights to privacy and security, the Legislature may by statute require the exclusion of evidence which might be admissible as a matter purely of constitutional law. See Mozo, supra. No statute can render evidence admissible, however, if the Fourth Amendment and article I, section 12 of the Florida Constitution require exclusion.
Clearly the trial court is correct that no broken tail light or the like justified stopping the truck appellees were in. On the other hand, the make, color, and location of the truck, the direction in which it was travelling, and the number of its passengers all reasonably led Officer Bass to his decision to pull the truck over and make inquiry. No more than two and a half miles from the crime scene, Officer Bass spotted appellees driving away from the crime scene in a vehicle matching the BOLO description only "a short time" after the BOLO issued. While we agree with the trial court that greater specificity as to the times involved and as to the distance between the crime scene and the stop would have been preferable, we cannot *348 agree that the State failed to prove a legal basis for the stop.
We hold that Officer Bass was "reasonably suspicious" and therefore justified in making the stop. Cf. Cobb v. State, 642 So.2d 656 (Fla. 1st DCA 1994) (where BOLO described three black male pedestrians who had robbed a rural convenience store, officer reasonably concluded that the suspects would have an automobile nearby and would drive toward a predominantly black community). While the route appellants took was not the only way they might have left the crime scene, it was a predictable route, given the direction in which they set out.
A law enforcement officer "may conduct a brief investigative stop of a vehicle, analogous to a Terry-stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990). An investigatory stop which is solely based upon "inarticulate hunches" or "unparticularized suspicion" is invalid. Terry v. Ohio, 392 U.S. 1, 22, 27, 88 S.Ct. 1868, 1880, 1883, 20 L.Ed.2d 889 (1968). Further, "investigatory stops are invalid as pretextual unless `a reasonable officer would have made the seizure in the absence of illegitimate motivation.'" Strickland, 902 F.2d at 940 (quoting United States v. Smith, 799 F.2d 704, 708 (11th Cir.1986)) (emphasis in original).
United States v. Harris, 928 F.2d 1113, 1116 (11th Cir.1991). In State v. Webb, 398 So.2d 820, 822 (Fla. 1981), our supreme court interpreted Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to require that an officer making a traffic stop "must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably justify the stop."
An investigatory stop is permissible if the facts afford an articulable, reasonable, particularized basis for suspicion that an individual being stopped is or has been engaged in wrongdoing. See State v. Daniel, 665 So.2d 1040 (Fla. 1995); Tamer v. State, 484 So.2d 583 (Fla. 1986). This test was met here. Since the stop was lawful, seizure of the evidence  all of which was in plain view  was also lawful. Evidence was seized only after Officer Bass learned of the bicycle theft and possibly only after the victim was actually "on the spot, accusing [appellees] face to face." Cronin v. State, 656 So.2d 213, 214 (Fla. 1st DCA 1995) (Benton, J., dissenting), review denied, 659 So.2d 1089 (Fla. 1995).
Officer Bass acted reasonably, taking into account "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It is no objection that he relied on the BOLO, its hearsay character notwithstanding, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), or that the dispatcher's advisory was itself in all likelihood a hearsay account of what another policeman had been told by the robbery victim. See United States v. Spach, 518 F.2d 866 (7th Cir.1975); United States v. Smith, 462 F.2d 456 (8th Cir.1972); State v. Morrill, 205 Conn. 560, 534 A.2d 1165 (1987); State v. Yaw, 58 Haw. 485, 572 P.2d 856 (1977); State v. Wengren, 126 Idaho 662, 889 P.2d 96, 100 (Ct.App. 1995); State v. Seaman, 236 Mont. 466, 771 P.2d 950 (1989); State v. Starks, 658 S.W.2d 544 (Tenn. Crim. App. 1983); Allen v. State, 899 S.W.2d 296 (Tex. Crim. App. 1995); State v. Alger, 151 Vt. 315, 559 A.2d 1087 (1989).
This robbery victim was not anonymous, was not a paid informer, and gave the police no reason to doubt his veracity. The police are entitled to credit ordinary citizens who fall victim to crime, if circumstances give no reason to believe they are fabricating, when a person matching an alleged perpetrator's description is found promptly nearby. United States v. Lewis, 738 F.2d 916 (8th Cir.1984), cert. denied, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (Mo. 1985); United States v. Wilson, 479 F.2d 936 (7th Cir.1973); People v. Henry, 631 P.2d 1122 (Colo. 1981); Hooks v. State, 416 A.2d 189, 202 (Del. 1980); Starr v. State, 159 Ga. App. 386, 283 S.E.2d 630 (1981); Clifford v. State, 474 N.E.2d 963, 969 (Ind. 1985); State v. Drake, 224 N.W.2d 476 (Iowa 1974); State v. Gilreath, 215 Neb. 466, 339 N.W.2d 288 (1983); *349 State v. Haron, 220 N.W.2d 829 (S.D. 1974); Allison v. State, 62 Wis.2d 14, 214 N.W.2d 437, cert. denied, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974). See Webb v. State, 760 S.W.2d 263 (Tex. Crim. App. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989).
The order granting the motions to suppress is reversed and the case is remanded for further proceedings.
MICKLE, J., concurs.
WEBSTER, J., concurs in result only.