755 So.2d 836 (2000)
STATE of Florida, Appellant,
v.
Miguel A. RAMOS and Steven Salvator Brana, Appellees.
Nos. 5D99-2259, 5D99-2260.
District Court of Appeal of Florida, Fifth District.
May 5, 2000.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellees.
ANTOON, C.J.
In this consolidated appeal, the State appeals the orders entered by the trial court granting the motions to suppress filed by Miguel Ramos and Steve Brana. We reverse the court's suppression orders and remand for further proceedings because the trial court applied the wrong legal standard in ruling on the suppression motions.[1]
*837 Mr. Ramos and Mr. Brana were each charged with committing twenty-six crimes, including attempted first degree murder with a firearm during the commission of a felony. The charges arose out of a robbery and shooting at the Thirsty Gator Bar and Grill in Orange County. Three men entered the bar wearing dark clothing covering their faces. The men forced patrons of the bar to the ground at gun point before removing the patron's valuables. They also took $1,300 from the cash register. As the men left the scene, one of them turned and fired at a patron hitting him in the leg. After exiting the bar, the men drove away in a new, black Ford Mustang which displayed a Florida tag bearing the number XJW94J, and was registered to Mr. Brana's wife. As the result of a police BOLO, a black Ford Mustang displaying the same tag was stopped the next day in St. Lucie County. Mr. Ramos, Mr. Brana and a third passenger were in the Mustang and each had a large sum of cash in his possession.
Mr. Ramos and Mr. Brana filed separate but identical pretrial motions to suppress evidence which was seized by the police from the Mustang following Mr. Brana's arrest on charges that he was driving with a suspended license. The motions alleged that suppression was warranted because "there was [no] probable cause for the stop of the vehicle and for the subsequent issuance of a search warrant." The trial court conducted an evidentiary hearing on the motions. During the hearing, two witnesses were called to testify.
The first witness was a deputy with the Orange County Sheriffs Office. The deputy testified that on September 20, 1997, he was dispatched to an armed robbery which had just occurred at the Thirsty Gator. He stated that he was the first law enforcement officer on the scene and his duty was to secure the scene for medical personnel who were coming to tend to the wounded. He also explained that immediately upon arriving at the scene, "a man and woman approached me when I was near the shooting victim and told me that they had seen some fellows, the fellows that did the shooting, or something to that effect, get in a car and take off. And they had a description of the vehicle and the tag number." The deputy testified that, based solely upon this information, he issued a BOLO for the car. On cross-examination, the deputy admitted that at the time he issued the BOLO he had not performed any independent investigation nor obtained the identification of either of the two witnesses, and that he did not know either of the witnesses.
The second witness called was an officer with the Port St. Lucie Police Department. The police officer testified that on September 21, 1997, he came to work and was informed that a BOLO had been issued for a black Mustang with a certain tag number because the vehicle had been involved in an armed robbery in Orange County. The officer stated that later that same evening he observed the Mustang traveling on Port St. Lucie Boulevard. He testified that when he identified the license plate as being the one contained in the BOLO he stopped the vehicle. There were three people in the vehicle, and Mr. Brana was the driver. When Mr. Brana was unable to produce a valid drivers license, he was arrested for driving with a suspended license. The car was secured.
Following the admission of this testimony, defense counsel argued that suppression of the evidence seized from the Mustang was warranted because the police officer lacked the legal authority to stop Mr. Brana's vehicle. Upon review, the trial court agreed, ruling that suppression was warranted because the Port St. Lucie police officer lacked "sufficient probable cause for the stop and seizure." In reviewing the trial court's order, we are bound by the court's finding of facts unless they are clearly erroneous. See State v. Setzler, 667 So.2d 343, 346 (Fla. 1st DCA 1995). However, in reviewing the court's application of the law to those facts, we engage in de novo review. See *838 Id. Applying this standard, we must reverse the trial court's ruling because, under the facts as presented here, a finding of probable cause was not necessary in order for the stop of Mr. Brana's vehicle to have been lawful.
A police officer may stop a person for the purpose of investigating possible criminal behavior, even though there is no probable cause to justify an arrest, as long as the officer has a reasonable suspicion that the person is or has engaged in criminal activity. See J.L. v. State, 727 So.2d 204, 206 (Fla.1998), affirmed, ___ U.S. ___, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). "All that is required for a valid vehicle stop, such as transpired in this case, ... is a founded suspicion on the part of the officer effectuating the stop that the occupants have committed or are about to commit a crime." London v. State, 540 So.2d 211, 213 (Fla. 2d DCA 1989)(citing Sumlin v. State, 433 So.2d 1303 (Fla. 2d DCA 1983)). In contrast, investigatory stops based solely upon an inarticulable hunch or unparticularized suspicion are invalid. See State v. Setzler, 667 So.2d 343 (Fla. 1st DCA 1995)(citing to Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
Here, the basis of the police officer's reasonable suspicion that the occupants of the Mustang had been engaged in criminal activity was the BOLO which had been issued by the Orange County Sheriff's Office. In order for a BOLO to constitute sufficient grounds to justify a stop, the information contained therein must be reliable. See U.S. v. Hensley, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); see also Hunter v. State, 660 So.2d 244 (Fla.1995), cert. denied, 516 U.S. 1128, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996). This reliability must be assessed in light of the totality of the circumstances. See Hensley, 469 U.S. at 234, 105 S.Ct. 675.
Here, the state presented testimony from the deputy who issued the BOLO concerning both the source of the information which formed the basis for the BOLO as well as the description of the vehicle described in the BOLO. Although the source of the information was two witnesses who were never identified, there was no reason evident from the facts presented for the deputy to doubt the veracity of their statements. After all, this was not a situation where a tip from an anonymous source advised law enforcement officer that a particular person had committed or was about to commit a crime. Instead, the robbery and shooting had been committed shortly before the deputy arrived at the scene. The deputy did not need to rely on the credibility of the witnesses who gave him consistent accounts of the robbery and shooting because such facts were independently established by the deputy's own observations. Moreover, the nature of the information provided by the witnesses was specific as to the make, model, color and license tag identification of the vehicle at issue. Under these circumstances, the fact that the deputy failed to obtain the names of the witnesses reporting the description of the car in which the robbers fled did not render the information contained in the BOLO unreliable. In so ruling, we note that in a recent concurring opinion Justice Kennedy wrote:
An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring.
State v. J.L., ___ U.S. ___, 120 S.Ct. 395, 145 L.Ed.2d 308 (2000)(Kennedy, J., concurring). We conclude that the instant facts fall within the parameters of Justice Kennedy's example.
In any event, since the instant record demonstrates that the Port St. Lucie police officer possessed reasonable suspicion based upon the information in the BOLO that Mr. Ramos and Mr. Brana were the perpetrators of the crimes committed at *839 the Thirsty Gator, the stop of the Mustang was lawful. See State v. Setzler, 667 So.2d 343 (Fla. 1st DCA 1995)(holding that BOLO was sufficient to give rise to reasonable suspicion justifying investigatory stop of car since information in BOLO was based upon comments made by the robbery victim).
In closing we note that, although the suppression motions and the trial court's suppression orders mention that a search warrant was issued in this case, the trial court did not issue a ruling on the legality of the search warrant. Also, the instant record does not contain a copy of the warrant and no evidence regarding the warrant was adduced during the suppression hearing. As a result, we have not considered nor ruled upon the legality of the search warrant issued in this case.
The orders of the trial court granting the suppression motions filed by Mr. Ramos and Mr. Brana are reversed and this matter is remanded for further proceedings.
REVERSED and REMANDED.
GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] Jurisdiction to review this order is proper pursuant to rule 9.140(c)(1)(B) of the Florida Rules of Appellate Procedure.