KAHN, J.
 

 This criminal appeal turns on whether City of Pensacola police officers had reasonable suspicion to detain a sport-utility vehicle in which appellant King was a passenger. Finding that the facts available to the officers would not support such reasonable suspicion, we reverse the conviction and remand with directions that Mr. King be discharged.
 

 BACKGROUND
 

 The facts below were developed at a hearing on appellant’s motion to suppress evidence of cocaine police officers discovered on his person following a traffic stop. After their shift muster, Pensacola police officers Decker and Coverdale walked to their cruisers and prepared to leave the police station for their patrol duties. As they approached their cars, the officers heard a dispatch. Officer Decker testified during the proceeding below that, according to the dispatch, a 911 caller reported that two men had attempted to break into her home. She described the perpetrators as two black males, by then leaving the scene in what Officer Decker remembered as a gray Chevy Blazer.
 

 Officer Decker headed in the direction of the suspects’ reported flight, which would have been north on D Street. Momentarily, he came upon a gray Chevrolet pickup truck. He did not stop that vehicle but, instead, circled back and noted that the occupants were a white man and a white woman. He eliminated these persons from suspicion of the crime. When asked why he turned to investigate a pickup truck, Officer Decker said that in his experience, people reporting crimes are often nervous and sometimes report inaccurate information as to type of vehicle.
 

 Officer Decker next saw a light green Ford Explorer occupied by two black men. The Explorer had properly halted at a stop sign at the intersection of Gadsden and A streets, some eight blocks from the reported criminal event. He watched the
 
 *730
 
 Explorer as it made a lawful turn northbound on A Street and proceeded at a lawful speed toward Cervantes Street. After the Explorer crossed Cervantes Street, Officer Decker initiated a stop using his spotlight and overhead blue lights. Officer Decker estimated the traffic stop occurred nine blocks from the attempted home invasion and some seven minutes afterward. By that time, Officer Cover-dale had arrived at the scene and also approached the stopped SUV.
 

 During the stop, Officer Decker checked the driver’s license while Officer Coverdale approached appellant, who was sitting in the passenger seat. Neither appellant nor the driver was sweating, nor did either appear to have been running. Neither officer described, with any specificity, efforts to directly ascertain whether or not appellant and his companion were connected to events reported in the 911 call; Officer Decker merely checked the driver’s identification and advised the driver that the officers were “investigating a breaking and entering and that the vehicle fit the description” of the getaway car.
 

 According to Officer Coverdale, during his encounter with appellant, he removed a small folded pocketknife from the vehicle’s center console to ensure his and his colleague’s safety during the stop, saw a dusting of white powder on the exposed part of the blade, and opened the knife and discovered more of the same substance. After a field test of the substance indicated the powder was cocaine, Officer Coverdale asked appellant to exit the Explorer, and he searched appellant’s person. Officer Coverdale retrieved a small bag of powder cocaine from appellant’s pocket, the discovery of which resulted in the charge at issue.
 

 The trial court also considered the 911 tape from the incident in question. According to that tape, the victim said the suspects were “two big black guys” who, according to the victim’s son, left the scene in a green Blazer with tinted windows and headed north on D Street. The victim believed one of the perpetrators was bald and that the suspects were wearing white tank tops or white T-shirts, although she could not be sure. Finally, she said that she heard the automobile operated by the perpetrators “spin out.” Undisputed testimony at the suppression hearing established that, from the victim’s 911 report, Officers Decker and Coverdale received only that information describing the suspects’ race, gender, and vehicle. Officer Decker testified he may have received information that the victim reported the perpetrators were in their twenties or thirties — appellant and the Explorer’s driver, in contrast, were in their fifties — but that information came only after Officer Cover-dale found cocaine on appellant’s person. After the trial court denied the motion to suppress, appellant entered a plea of nolo contendré, reserving his right to appeal denial of the dispositive motion to suppress.
 

 ANALYSIS
 

 We must determine the legal justification for the investigatory stop and subsequent seizure based upon the above-recited facts, which are consistent with the facts that the trial court recounted in the order denying appellant’s motion to suppress. We review the trial court’s application of the law to the facts de novo.
 
 See Connor v. State,
 
 803 So.2d 598 (Fla.2001).
 

 Of the “three levels of police-citizen encounters” recognized for Fourth Amendment purposes, this case involves an “investigatory stop” during which “a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime.”
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993). Such a stop “requires a well-founded, articulable suspicion of crim
 
 *731
 
 inal activity” — “a reasonable suspicion that a person has committed, is committing, or is about to commit a crime.”
 
 Id.
 
 The officer with such suspicion may stop a vehicle and detain a driver “for a reasonable investigation, including ascertaining the driver’s identification.”
 
 State v. Moore,
 
 791 So.2d 1246, 1249 (Fla. 1st DCA 2001).
 

 A reviewing court must consider “[t]he totality of the circumstances ... when determining whether an officer had a reasonable suspicion of criminal activity to justify the investigatory stop.”
 
 Huffman v. State,
 
 937 So.2d 202, 206 (Fla. 1st DCA 2006). When assessing whether a “be-on-the-lookout” alert sufficiently justifies an investigatory stop, the court considers: “(1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information.”
 
 Hunter v. State,
 
 660 So.2d 244, 249 (Fla.1995).
 

 Upon careful consideration of the facts and the foregoing authorities, we conclude that the only objective information upon which the officers ultimately relied was the race of the alleged perpetrators. Supporting our conclusion that race assumed great importance in the assessment of reasonable suspicion here, we note the officers’ failure to stop and investigate the first vehicle, whose occupants were white, despite the officers’ testimony that victims of crimes are often confused and get mixed up on their details. Considering the BOLO factors enumerated by
 
 Hunter,
 
 we conclude that the length of time and distance from the offense is a neutral factor. Although appellant and the driver were, when first spotted, only eight blocks from the site of the offense, this is not particularly consistent with the victim’s claim that the perpetrators “spun out” as they were leaving the scene. Moreover, the officers quite truthfully testified that appellant and the driver were middle-aged black men occupying a vehicle that differed, albeit not dramatically, from the BOLO description both in color and in make. As to the specificity factor, then, we find little, if any support, beyond race. The facts concerning the source of the BOLO are not particularly supportive, given the sparse information actually conveyed in the dispatch, and Officer Decker’s concern that victim descriptions are often unreliable. Finally, no record evidence suggests that, aside from checking appellant’s and the driver’s identification, the officers made any further efforts to ascertain specifically whether or not appellant and the driver were actually possible suspects of the attempted break-in.
 

 If we limit our inquiry to the contents of the BOLO, the only factor consistent with reasonable suspicion here would be appellant’s race. We have not overlooked the fact that appellant occupied a sport-utility vehicle, perhaps of similar appearance to the sport-utility vehicle reported by the victim. Nevertheless, according to Officer Decker’s testimony, this description, considering its source, would have been broad enough to allow, at the least, investigation of a pickup truck and virtually any make of sport-utility vehicle. Accordingly, we have concluded that the information available to the officers did not reach the level of reasonable suspicion of criminal activity required by
 
 Popple.
 
 The contraband ultimately discovered should have been suppressed.
 

 We REVERSE the conviction and REMAND the matter to the circuit court with directions that appellant be discharged.
 

 WOLF and VAN NORTWICK, JJ„ concur.