WETHERELL, J.
 

 Appellant pled no contest to possession of cocaine, reserving the right to appeal the trial court’s denial of his dispositive motion to suppress. We reverse because the state failed to prove that the deputy who stopped Appellant had a reasonable suspicion of criminal activity to justify the stop.
 

 On March 18, 2007, at a little after 4:00 a.m., an Escambia County Sheriffs Deputy was dispatched to investigate a report of suspicious activity called in by a hotel clerk identified in the record only as “Glenda.” At the suppression hearing, the deputy read the Computer Assisted Dispatch (CAD) report to which he was responding as follows:
 

 It was Blue Angel Inn reference to a male subject that was trying to open the back door. She saw him there about one hour ago. They were in a maroon four door possible Lincoln. There were three black males in the car. And then it says complaint type changed from suspicious person to suspicious person vehicle. And then it reiterates Blue Angel Inn, sir.
 

 The deputy further testified:
 

 As per the call notes of which I was aware of that night, ... the clerk had attempted to ask the group of individuals to leave. One of the individuals had then opened [] what I was told was a back door. I’m still not very sure on exactly where that was. And the clerk fearing for her safety had called Escam-bia County sheriffs office dispatch.
 

 En route to the hotel, the deputy saw a car matching the description in the CAD report. The deputy turned behind it and stopped the car. Appellant was driving and there was one other person in the car. The deputy told Appellant and the passenger, Jerry Gillard, that there was “suspicious activity at a hotel close by” and “they stated that they had been coming from that hotel.” The deputy asked Appellant to come to the back of the car, which he did. While Appellant remained behind, the deputy went to speak with Gillard. The deputy then noticed “a small baggie of green leafy substance pushed down next to [Gillard’s] leg.” The deputy asked Gillard to get out of the car and arrested him. The deputy then searched Appellant and found crack cocaine in his jacket, at which point he was arrested.
 

 When asked why he stopped Appellant’s car, the deputy answered:
 

 It closely matched a vehicle description given to us of a vehicle which had possibly been used in the commission of a crime.
 

 [Defense counsel:] What crime was that?
 

 [Deputy:] Well, sir, that’s what we were being dispatched to ascertain. And at the very least what I felt to be true when I was responding was at the very least, a trespassing and possibly an attempted burglary, sir.
 

 When asked for his “reasonable articula-ble suspicion that [Appellant] had committed a crime, was committing a crime, or was about to commit a crime” when he stopped Appellant, the deputy answered:
 

 Due to the complaint by an individual who had, who we did know the place of employment, she had given it the very least her first name. And I’m not really familiar with how dispatch works. I’m fairly certain that they have a caller ID
 
 *149
 
 and things of that sort. And she was the complainant on the suspicious activity, sir.
 

 Appellant testified that he and his cousin, Gillard, went to the Rodeway Inn (which, according to the deputy, is either the same hotel as or is in “extraordinarily close proximity” to the Blue Angel Inn) and pulled up to the front door. The front door was locked, so Appellant walked around to the back. He put his ID in a slot through a Plexiglas window because he wanted to rent a room. An Asian man behind the counter told Appellant there were no rooms and Appellant got in his car and left. He testified that he did not try to get a room at the Blue Angel Inn.
 

 The trial court denied Appellant’s motion to suppress. The court’s oral ruling (which was incorporated by reference in the written order denying the motion) did not discuss the reasonable suspicion that the court apparently found to have existed in order to justify the stop in the first instance. Instead, the trial court focused on the probable cause that existed to search the vehicle after marijuana was discovered on Gillard and the inevitability of Appellant being searched after additional marijuana was discovered in the arm rest of the car.
 

 Appellant thereafter pled no contest to the drug possession charge (no charges related to the suspicious activity at the hotel were brought), reserving the right to appeal the denial of the motion to suppress. The trial court withheld adjudication and sentenced Appellant to two years of probation, with the condition that he remain incarcerated until he was accepted into a substance abuse program.
 

 The trial court’s ruling on a motion to suppress is a mixed question of law and fact.
 
 Panter v. State,
 
 8 So.3d 1262, 1265 (Fla. 1st DCA 2009). The trial court’s findings of fact are entitled to deference, but its application of the constitutional standard to the facts is subject to
 
 de novo
 
 review.
 
 Id.
 

 “In evaluating the legality of the [deputy’s] actions, we must examine the facts available to the [deputy] and the totality of the circumstances to determine whether [he] had a particularized, objective basis to suspect criminal activity.”
 
 Id.
 
 at 1265-66. To justify an investigatory stop, the deputy had to have a reasonable suspicion that Appellant had committed, was committing, or was about to commit a crime.
 
 King v. State, 17
 
 So.3d 728, 730-31 (Fla. 1st DCA 2009) (quoting
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993));
 
 see also
 
 § 901.151(2), Fla. Stat. (2006).
 

 “ ‘Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the “totality of the circumstances— the whole picture,” that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.’ ”
 
 Baptiste v. State,
 
 995 So.2d 285, 291 (Fla.2008) (quoting
 
 Alabama v. White,
 
 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). To create reasonable suspicion, a tip must be reliable not only in its description of the subject, but also “in its assertion of illegality.”
 
 Florida v. J.L.,
 
 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).
 

 Appellant concedes that the hotel clerk who called the dispatcher is a citizen informant, and therefore “falls at the higher end of the reliability scale.”
 
 Baptiste,
 
 995 So.2d at 291. Appellant essentially
 
 *150
 
 argues that, while the tip at issue is deemed relatively reliable, and that therefore under
 
 Baptiste
 
 comparatively less information is necessary to establish the l’equisite quantum of suspicion, the information in the CAD report does not clear even that low bar. In other words, Appellant argues that the deputies had no objective basis to stop him because what was reported to the dispatcher and relayed to the deputy in the CAD report did not create a reasonable suspicion that Appellant (or anyone else) had committed, was committing, or would commit a crime. We agree. To borrow
 
 J.L.
 
 ⅛ phrase, the tip was not reliable “in its assertion of illegality” and was therefore insufficient to justify the stop.
 

 According to the deputy’s testimony, the hotel clerk told the dispatcher that a black man tried to open the back door of the Blue Angel Inn about an hour before she called, that the man left in a maroon Lincoln, and that there were a total of three black men in the car. Assuming all of this is true (as the trial court appears to have found it to be despite the fact the clerk did not testify and Appellant testified that he was at the Rodeway Inn, not the Blue Angel Inn), it is difficult to see how this forms a reasonable suspicion that Appellant had committed, was committing, or would commit a crime. Even the deputy did not know what crime had been committed; he was on his way to “ascertain” just that.
 

 The deputy testified that he felt there might have been a trespass or attempted burglary, but the state makes no real attempt to argue that trying the back door to a hotel and then leaving rises to the level of those crimes, and it is noteworthy that Appellant was not charged with any offense related to the suspicious activity reported by the hotel clerk. Even if, as the police report states, the hotel clerk was afraid that the men she saw may have been trying to see whether she was alone for purposes of robbing her, the clerk’s “hunch” about the men’s intention (which apparently was not correct because the men left and no robbery occurred) was not enough to establish a reasonable suspicion that would justify the stop.
 
 See Terry v. Ohio,
 
 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (explaining that the reasonable suspicion standard requires more than a “hunch” of criminal activity).
 

 This case is analogous to
 
 R.E. v. State,
 
 536 So.2d 1125 (Fla. 1st DCA 1988), in which we reversed the trial court’s denial of a motion to suppress because the information provided to the police by a citizen informant did not raise a reasonable suspicion that criminal activity was afoot. The informant in
 
 RE.
 
 reported that he observed a suspicious meeting between two individuals in a parking lot, and that although he did not observe any drugs or money exchange hands, the behavior of the individuals suggested to him that a drug transaction had taken place.
 
 Id.
 
 at 1126. We explained:
 

 The state would have us treat the instant case as if [the citizen informantj’s information pertained to a specific offense. In such a case, reasonable suspicion would be found to exist upon a showing that the informant was reliable and the information contained sufficient detail to identify the suspect, [citation omitted]. The instant case, however, involved the report of generalized, allegedly suspicious activity. In such cases, it is necessary to make the additional showing that the information made it reasonable to suspect that a crime had been, was being, or would be committed. This showing was never made.
 

 The absence of some reasonable basis to suspect that crime was afoot makes the instant case comparable to
 
 Hall v. State,
 
 
 *151
 
 366 So.2d 865 (Fla. 4th DCA 1979). In
 
 Hall,
 
 the police received a report from the manager of a clothing store that two black males were in the store behaving suspiciously; they had been in the store several times during the day but did not seem interested in making a purchase. An officer arrived just as the suspects were leaving the store and driving away. The officer followed the suspects and eventually stopped them without having observed any additional cause for suspicion. Finding this insufficient to constitute reasonable suspicion, the Fourth District reversed the trial court’s denial of the motion to suppress. As in
 
 Hall,
 
 the instant case involves a citizen’s claim of suspicious activity that has a minimal objective basis and, except for innocent details of identification, is uncorroborated by law enforcement’s subsequent observations. Corroboration of nothing more than innocent details of identification (e.g., a license plate number) assists the state in making the required showing that the information was sufficiently detailed to single out the suspect. It does not, however, create or support a suspicion that crime is afoot, which is essential if a report of generalized, allegedly suspicious activity is to justify a stop. The absence of this suspicion is fatal to the state’s position and the trial court’s ruling.
 

 Id.
 
 at 1128 (emphasis supplied).
 

 The same reasoning applies in this case. There is no dispute as to the hotel clerk’s reliability. It is simply that the information provided by the clerk did not create a reasonable suspicion that criminal activity was afoot.
 

 The state contends that a “be-on-the-lookout” alert (BOLO) was issued and that the BOLO provided a reasonable suspicion for the deputy to stop Appellant because his car matched the description in the BOLO and it was observed in the vicinity where the “crime” was reported. We disagree.
 

 First, the record is unclear as to whether a true BOLO was issued; all but one record reference is to the deputy having been dispatched to the hotel to investigate a specific report of suspicious activity. Second, even if the CAD report was considered a BOLO, the problem remains that (as was the case in
 
 R.E.)
 
 the BOLO was not based upon a report of any criminal activity; it was based only upon a report that a man tried the door to a hotel and left an hour prior to the report. Third, the cases relied on by the state for the proposition that a BOLO can provide a reasonable suspicion for an investigatory stop are distinguishable because those cases involved BOLOs for suspects in ongoing or prior crimes.
 
 See State v. Webb,
 
 398 So.2d 820 (Fla.1981) (BOLO for a man “who had committed two armed robberies at two named drug stores on the two previous days”);
 
 State v. Setzler,
 
 667 So.2d 343 (Fla. 1st DCA 1995) (BOLO for a “cream colored pick-up with three black males leaving the scene of a robbery”);
 
 Cobb v. State,
 
 642 So.2d 656 (Fla. 1st DCA 1994) (BOLO for three black males who fled from an armed robbery on foot).
 

 In sum, the totality of the circumstances did not provide the deputy with a reasonable suspicion sufficient to justify the stop and, therefore, the trial court should have granted Appellant’s motion to suppress. Accordingly, we reverse and remand with directions to grant the motion to suppress, vacate the conviction and sentence in this case, and discharge Appellant to the extent that he is not being held in other cases.*
 

 
 *152
 
 REVERSED and REMANDED with directions.
 

 KAHN and LEWIS, JJ., concur.
 

 We are reluctant to direct the trial court to discharge Appellant without this qualification
 
 *152
 
 because the record reflects that the state advised the trial court at the sentencing hearing that Appellant had committed three additional offenses while he was out on bond in this case. The record does not reflect the disposition of those new cases, which were not before the trial court at the time of sentencing in this case.