787 So.2d 224 (2001)
Keith MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-2623.
District Court of Appeal of Florida, Second District.
May 18, 2001.
*226 James Marion Moorman, Public Defender, and Tosha Cohen, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Acting Chief Judge.
Keith Mitchell appeals his judgment and sentence for possession of marijuana with intent to sell within one thousand feet of a school and for opposing an officer without violence. He pleaded to the charges after reserving his appellate rights when the trial court denied his dispositive motion to suppress, including a finding that the confidential informant used was reliable. We hold that the court erred as a matter of law in finding that information from the confidential informant gave the officer probable cause to arrest the suspect. Nevertheless, because the search and seizure were constitutional under an alternative theory, we affirm.
The trial court heard the following evidence at the suppression hearing. On April 21, 2000, Corporal Gillum, a ten-year veteran of the Palmetto Police Department, received a telephone call from a person he described as a confidential informant [C.I.]. The C.I. told him that two black males were selling narcotics at Groover's Store in Palmetto and described the first as "wearing a red Buccaneers jersey with number 81" and the second as "wearing a white hat with a white shirt and blue pants." After receiving this information, Corporal Gillum drove to the area and verified within minutes that two men matching that description were standing near the pay telephone. The officer then called for assistance and, when additional officers arrived, approached the two subjects. Mr. Mitchell began to flee on a bicycle but was stopped and instructed to get off his bicycle. Mr. Mitchell reached down toward his pocket, which caused the officer to grab him. Nevertheless, Mr. Mitchell was able to free one of his hands and throw a plastic bag over a chain-link fence to a spot visible to the officer. Once Mr. Mitchell was secured, the bag was retrieved and found to contain what the officer described as "ten dime-bags of marijuana."
The issue presented is whether there was probable cause to seize Mr. Mitchell. Clearly, there was no probable cause for Mr. Mitchell's stop and detention without the information the C.I. provided. To determine whether information from a C.I. gives rise to probable cause, a court must look at the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Butler, 655 So.2d 1123 (Fla.1995). The court must measure the C.I.'s veracity as well as the basis of the C.I.'s knowledge. Veracity can be established by proof that the C.I. has provided reliable *227 information in the past or has provided detailed and verifiable information on the occasion in question. Everette v. State, 736 So.2d 726 (Fla. 2d DCA 1999).
Officer Gillum's testimony contained a paucity of information on this issue. The officer testified that the C.I. had supplied him with information on five prior occasions that resulted in four arrests for possession of cocaine. On cross-examination the officer revealed that in the previous cases the C.I. had acted as an agent for the police by making controlled buys of cocaine. Mr. Mitchell's case was apparently the first instance in which the C.I. had provided a tip. The C.I.'s tip was merely that two black males, wearing certain common items of clothing, were standing in a public place and were selling narcotics. The type of drugs was not specified, and if the C.I. revealed to Officer Gillum how this information was obtained, the officer did not so testify at the hearing. Furthermore, the tip did not describe the manner in which these sales allegedly took place.
The State may prove a C.I.'s veracity by demonstrating that, in the past, the C.I. had provided reliable information. Relevant to the issue of veracity are the nature and quality of the information provided in the past and the extent to which it was verified. Here, rather than demonstrating the reliability of the C.I.'s past tips, the State attempted to establish that the C.I.'s information was reliable because the C.I.'s behavior contributed to the success of previous controlled buys. Reliable behavior, however, is not the same thing as reliable information for constitutional standards. Although Officer Gillum equated a controlled buy situation with an informant's tip ("same thing to me, basically"), there is a significant difference. In a standard controlled buy situation, most law enforcement departments follow a specific protocol. Officers search the C.I. before attempting the controlled buy to insure that the C.I. possesses no contraband. Law enforcement provides the buy money and directs the C.I. to the place of the sale. Following the transaction, officers again search the C.I. and seize any contraband found as evidence. During the controlled buy process, the C.I. is most often under surveillance. Thus, it is apparent that in a controlled buy the C.I. acts as an assistant to law enforcement rather than as a supplier of information, although the informant might have provided some of the information leading up to the controlled buy. In this case, however, Officer Gillum was not asked about and did not testify as to any details of that nature.
Absolutely no record evidence here identifies past information provided by this C.I., its nature, its value, or the manner in which it was verified. Without such evidence, we can only conclude that the trial court erred as a matter of law in finding the C.I. reliable. If this C.I. actually provided information leading to the controlled buys in the past, not a scintilla of evidence in this record established that point.
On those occasions when the reliability of the C.I. has not been established as outlined above, the State may alternatively prove veracity by showing that the information leading to the arrest in the current case was both sufficiently detailed and verifiable. Everette, 736 So.2d at 727. Here, the C.I.'s information lacked sufficient detail. Missing were such facts as the source of the information, the means or methods by which the alleged narcotic transactions were made, and the type of illegal drug being sold. The only verifiable information was the subject's location and clothing, which was readily available because the two subjects were in an open, public place.
*228 As in Everette, the C.I.'s tip lacked specific details not easily accessible to the general public. Cf. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (holding the following information from the C.I. sufficiently reliable: the suspect was bringing back three ounces of heroin by train, returning either on the morning of Sept. 8 or 9; the suspect was a Negro of light brown complexion, 27 years old, 5' 8" tall, about 160 lbs., who would be wearing a light-colored raincoat, brown slacks, and black shoes, and would be carrying a tan zipper bag; and the suspect habitually walked very quickly). Without more evidence suggestive of criminal activity, the very generalized description in this case could apply to many innocent persons. See also Palmer v. State, 752 So.2d 98, 99 (Fla. 2d DCA 2000); Miller v. State, 780 So.2d 151 (Fla. 2d DCA 2000).
The shortcomings of the tip in this case are further highlighted by comparison with State v. Butler, 655 So.2d 1123 (Fla.1995), where, as here, the C.I. described the subject's race, clothing, and present location. In contrast to this case, however, the C.I. in Butler knew that the drug being sold was cocaine, that the suspect kept the cocaine in his pants pocket, and that he delivered it in rolled-up dollar bills. Most significantly, the police in Butler were able to corroborate "every item in the tip except the ultimate determination of whether Butler had any drugs on his person." Id. at 1130.
In the absence of a search warrant, it is the government's burden to establish, by proof, a recognized exception to the warrant requirement, see Irons v. State, 498 So.2d 958 (Fla. 2d DCA 1986), here, probable cause. The State's evidence failed to establish the C.I.'s veracity or reliability, and the State did not prove probable cause through the officers' corroboration of criminal activity. Accordingly, the trial court erred in finding that the confidential informant was reliable and that the information provided met the probable cause standard.
However, the denial of the suppression motion is justified under the standard announced in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). In Wardlow the Supreme Court reiterated that, consistent with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may conduct a brief investigatory stop when the officer possesses "a reasonable, articulable suspicion that criminal activity is afoot." Wardlow, 528 U.S. at 123, 120 S.Ct. 673. In determining whether reasonable suspicion exists, the conduct of the law enforcement officer must be examined by the use of "commonsense judgments and inferences about human behavior." Id. at 125, 120 S.Ct. 673. Applying Wardlow to these facts, we conclude that Officer Gillum was justified in suspecting that Mr. Mitchell was involved in criminal activity and, therefore, could engage in further investigative efforts.
A number of the factors recognized in Wardlow are likewise present here. Officer Gillum's testimony established that the location was considered a high crime area; in fact, just prior to this incident the police had arrested a number of individuals seeking to purchase narcotics. The officer had confirmed the informant's description of the alleged sellers and personally thought the C.I. was reliable. To the extent that he was able to verify both the location and description, Officer Gillum's personal opinion that the informant was credible was reinforced. Finally, as the officer approached, Mr. Mitchell began to flee. Under Wardlow flight is one factor in the totality of circumstances that may be considered to support *229 an investigatory detention. Accordingly, the officer properly approached Mr. Mitchell and engaged him in a constitutional Terry stop.
At that juncture, Mr. Mitchell thrust his hands toward his pocket and caused the officer to have justifiable concern for his safety. When the officer properly responded to this potential threat, Mr. Mitchell voluntarily abandoned the drugs by throwing them over the fence. Therefore, the officer's seizure of the marijuana was constitutionally justified, as was his arrest of Mr. Mitchell, and the court's denial of the motion to suppress was proper.
In summary, guided by the Supreme Court's analysis in Wardlow, we find that the aggregate of the following circumstances gave rise to reasonable suspicion: high crime area, recent drugs sales, a known confidential informant, the verification of information provided by the C.I., and the suspect's abbreviated attempt at flight. This case involved more than the suspect's mere presence in a high crime area and an isolated attempt to flee. The State proved that Officer Gillum reasonably and constitutionally intruded upon Mr. Mitchell's expectation of privacy when he stopped the suspect to make a brief investigation. During this legal Terry stop Mr. Mitchell's conduct gave rise to probable cause to detain him further, and the subsequent seizure of the abandoned marijuana was lawful.
Affirmed.
SALCINES and STRINGER, JJ., Concur.