927 So.2d 78 (2006)
Donald Quinn BRYE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D05-0624.
District Court of Appeal of Florida, First District.
April 7, 2006.
*80 Nancy A. Daniels, Public Defender; Archie F. Gardner, Jr., Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General; Sheron Wells, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
After the trial court denied Donald Quinn Brye's (Appellant) legally dispositive motion to suppress evidence seized during an allegedly unlawful detention and involuntary search, Appellant entered a plea of no contest to the charged offense, possession of a controlled substance (cocaine), while reserving the right to appeal the denial of the motion to suppress. The trial court adjudicated Appellant guilty and sentenced him to 20 months' incarceration. Concluding that the trial court should have granted the motion to suppress because the drug contraband that served as the basis for Appellant's arrest, charges, and conviction was seized during an illegal detention and pursuant to an involuntary search, we reverse the conviction and sentence and remand to the trial court with directions to enter a discharge order. See Fernandez v. State, 917 So.2d 1022, 1024 (Fla. 1st DCA 2006).
Florida courts have shown "great deference" to the lower tribunal's ruling on a motion to suppress. See Connor v. State, 803 So.2d 598, 605 (Fla.2001). "A trial court's ruling on a motion to suppress comes to us clothed with a presumption of correctness and, as the reviewing court, we must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Murray v. State, 692 So.2d 157, 159 (Fla.1997); Connor, 803 So.2d at 605. By state constitutional mandate in the conformity clause, we are to resolve Fourth-Amendment search and seizure issues in accordance with applicable United States Supreme Court precedents. See Art. I, § 12, Fla. Const.; Holland v. State, 696 So.2d 757, 759 (Fla.1997); State v. Robinson, 740 So.2d 9, 13 n. 3 (Fla. 1st DCA 1999). The trial court's ruling on a motion to suppress is a mixed question of law and fact. See State v. Christman, 838 So.2d 1189, 1191 (Fla. 2d DCA 2003). The United States Supreme Court has stated that mixed *81 questions of law and fact that ultimately determine constitutional rights are to be reviewed by the appellate courts applying a two-step approach. Deference is to be shown to the trial court on questions of historical fact, but de novo review of the application of a constitutional standard to the facts in a particular case is proper. See United States v. Bajakajian, 524 U.S. 321, 336 n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998); Ornelas v. United States, 517 U.S. 690, 696-98, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor, 803 So.2d at 605-06.
The testimony offered by the State at the suppression hearing reflected that on August 20, 2004, while on uniformed bike patrol, Deputy Hunnicutt left the other riders. As the deputy cut through a wooded "pig trail" near the railroad tracks in a location known by the police as "a high drug area" where "crack" cocaine is smoked, he saw two males (including Appellant) exiting the woods around 7:45 p.m. or dusk. In what he considered to be "a citizen contact," Deputy Hunnicutt approached the men and asked them both for positive identification. Because both men were extremely nervous, the deputy wondered what was going on. Appellant produced a driver's license or some other form of identification. The deputy noted that the address on the I.D. was nowhere near that particular location. When the deputy asked him what he was doing there, where he was coming from, or why he was coming out of the patch of woods, Appellant responded that he was visiting a friend or something like that. The deputy's deposition indicated that Appellant had said he was coming from his new residence. Deputy Hunnicutt testified that both of the men were "very evasive." The deputy was concerned mainly about why Appellant was in that area, and the deputy did not deem Appellant's given reason for being there very plausible. Deputy Hunnicutt testified that Appellant's answers would have explained his business being in that area if Appellant could have provided an address, but he supplied neither a street address nor a telephone number. During his investigation, the deputy placed Appellant's I.D. on the clip of his policeman's belt, in accordance with his customary practice in dealing with everyone who presents an I.D. His habit is to retain the I.D. until all is said and done, after which he returns the I.D. to its owner. While still holding on to Appellant's I.D. card, Deputy Hunnicutt called in Appellant's I.D. and found no active, outstanding warrants.
The United States Supreme Court and the Supreme Court of Florida have distinguished essentially three levels of police-citizen encounters. In ascending order of police contact, the levels are a consensual encounter, an investigatory stop, and an arrest supported by probable cause that a crime has been, or is being, committed. See, e.g., United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Popple v. State, 626 So.2d 185, 186 (Fla.1993); Robinson, 740 So.2d at 12. The court in Popple described Level One as follows:
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
Popple, 626 So.2d at 186. Level Two is the so-called Terry stop:

*82 The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop. Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984).
Popple, 626 So.2d at 186. "[A] person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart." Id. at 188. Before Terry, "any restraint on the person amounting to a seizure for the purposes of the Fourth Amendment was invalid unless justified by probable cause," but Terry "created a limited exception to this general rule" so that certain seizures were justified under the Fourth Amendment where the requisite articulable suspicion existed. Florida. v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). A reasonable suspicion of criminal activity will justify "a temporary seizure for the purpose of questioning limited to the purpose of the stop." Id.; United States v. Brignoni-Ponce, 422 U.S. 873, 881-82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). "A `founded suspicion' is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). Although this well-founded suspicion does not have to be fact-based enough to constitute probable cause to arrest, it "must be enough to draw the officer's attention to something more specific than a wide, unparticularized range of potential suspects." Brandin v. State, 669 So.2d 280, 282 (Fla. 1st DCA 1996) (quoting Cobb v. State, 642 So.2d 656, 658 (Fla. 1st DCA 1994)).
It is well-established that "an officer does not need to have a founded suspicion to approach an individual to ask questions." Id. at 187. As the United States Supreme Court has explained:
[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.
Royer, 460 U.S. at 497, 103 S.Ct. 1319. Therefore, Deputy Hunnicutt's initial contact with Appellant and the other man was nothing more than a police-citizen encounter involving "only minimal police contact." Popple, 626 So.2d at 186.
During the initial questioning of Appellant, the deputy asked for identification. "A police officer's request to a defendant for his identification does not constitute detention or seizure." State v. Gonzalez, 919 So.2d 702, 703 (Fla. 5th DCA 2006); Clemons v. State, 747 So.2d 454, 455 (Fla. 4th DCA 1999). During the investigation of Appellant, Deputy Hunnicutt clipped the I.D. to his police belt. After running an I.D. check and finding no outstanding warrants in Appellant's name, the deputy still held on to Appellant's identification card, without which Appellant effectively was not able to leave the premises. Under the applicable objective standard, a reasonable person would not have felt that he or she was free to leave under these circumstances. In other words, Appellant was "effectively seized *83 for the purposes of the Fourth Amendment." Royer, 460 U.S. at 501-02, 103 S.Ct. 1319. Certainly, once the I.D. check showed no outstanding warrants, Deputy Hunnicutt lacked any reasonable suspicion to believe that Appellant had committed, was committing, or was about to commit a crime. Given these circumstances, the deputy should have relinquished Appellant's I.D. card and allowed him to leave.
Instead, still retaining Appellant's identification clipped to his belt, Deputy Hunnicutt asked for Appellant's permission to be searched. Although the deputy could not remember his specific question, he testified that, typically, he asks a suspect: "Do you have anything illegal on your person, anything that may get you into trouble?" Sometimes the deputy inquires: "Have you got a problem with me checking?" On other occasions, he asks: "Do you mind if I search your person?" According to the deputy, Appellant gave permission to search without ever objecting and without ever indicating that he did not want to speak to the deputy or that he wished to leave. Deputy Hunnicutt testified that he always performs a pat-down first. During the ensuing pat-down search, he felt "a tubular, circular type thing" in Appellant's right front pocket. When he was asked what the object was, Appellant replied "I don't know." That response "raised a flag" for the deputy, who retrieved the item, which had "Accucheck" written across it. Appellant indicated that it was his aspirin. When the deputy opened the container, he observed what (through his training and experience) appeared to be "crack" cocaine, and Appellant was arrested.
Citing State v. Ferrell, 705 So.2d 1051 (Fla. 1st DCA 1998), and Jones v. State, 658 So.2d 178 (Fla. 1st DCA 1995), the trial court denied the motion to suppress on the ground that an officer patrolling in a high-crime area can ask a citizen to produce identification without the incident's constituting a detention or seizure. Although the trial court's general proposition is true, the appropriate inquiry should not have ended there.
"[W]hat began as a consensual encounter evolved into an investigatory stop." Morrow v. State, 848 So.2d 1290, 1293 (Fla. 2d DCA 2003). A key feature of a Level One police-citizen encounter "is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity." Popple, 626 So.2d at 187-88. "[T]he totality of the circumstances controls in cases involving the Fourth Amendment." State v. Baez, 894 So.2d 115, 117 (Fla.2004). The circumstances presented to Deputy Hunnicutt did not give rise to a reasonable suspicion that Appellant had committed, was committing, or was about to commit a crime. Because the deputy continued to retain Appellant's I.D. card after the warrant check came back clean, and then asked for permission to conduct a personal search, the detention was unlawful. See § 901.151(2), Fla. Stat. (2004); Royer, 460 U.S. at 501-03 & n. 8, 103 S.Ct. 1319 (stating that although detectives' requesting and examining prospective airline passenger's ticket and driver's license were permissible, passenger was effectively "seized" for Fourth-Amendment purposes when detectives identified themselves as narcotics agents, told passenger he was suspected of transporting narcotics, and asked passenger to accompany them to adjacent airport storage room while retaining his ticket, driver's license, and luggage throughout the encounter); Popple, 626 So.2d at 186; Barna v. State, 636 So.2d 571 (Fla. 4th DCA 1994).
*84 The trial court erred in basing its denial of the motion to suppress on the materially distinguishable facts in our decisions in Ferrell, 705 So.2d at 1051, and Jones, 658 So.2d at 178. In Ferrell, an officer on foot patrol near a hotel in an area known for high crime and drug activities saw Mr. Ferrell, whom the officer recognized from previous contacts and knew to be a cocaine user, standing on the hotel porch. When the officer asked if he had any weapons or drugs or stolen items, Ferrell answered in the negative, invited the officer to go ahead and search him, and spread his arms and legs without being asked to do so. The officer discovered "crack" cocaine in Ferrell's shirt pocket. See 705 So.2d at 1052. The State challenged the trial court's order granting Ferrell's motion to suppress. Noting that, without more, an officer's "question simply asking about criminal conduct" will not elevate a consensual police-citizen encounter to an unlawful detention, and that the record did not indicate that force or intimidation was used against Ferrell, we reversed and remanded for further proceedings. See id.
In Jones, 658 So.2d at 178, a deputy sheriff driving an unmarked, but obvious, police car encountered Mr. Jones on a bicycle. The deputy, who knew Jones from having arrested him previously for sale of cocaine, asked if they could talk, and Jones assented. When asked whether he had any weapons, Jones said he did not. When the deputy asked if he could search him, Jones responded: "Yeah. I ain't got nothin' [sic]." At the suppression hearing, the deputy testified that on stopping Jones, he had no probable cause to believe Jones was committing a crime. He had wanted to search Jones, but if Jones had not consented to the search, then the deputy would have let him leave. The deputy testified that Jones had been free to leave, although the deputy had not told him so. According to the deputy, a pat-down of Jones' clothing commenced, which Jones interrupted by placing his left hand into his left pants pocket while saying that all he had was money. When taking his hand out of his left pocket, Jones removed money and a rock of "crack" cocaine, which Jones tossed forward to the ground. The deputy testified he did not tell Jones to empty his pockets. See id. at 179. The trial court found that the search during the police-citizen encounter was consensual. The motion to suppress was denied, and Jones was convicted of possession of cocaine. We affirmed the trial court's ruling. See id. at 180.
The instant facts are analogous to the circumstances in Barna, 636 So.2d at 571. Two police officers observed Mr. Barna and another man standing and smoking and conversing in the back corner of a public parking area behind a bar at 11:30 p.m. See id. at 572. As the officers approached, one of them informed the men that the officers were going to investigate the situation a little further in the course of checking on drug activity, car theft, and automobile burglaries in the immediate vicinity. Both men produced identification on request, and the police held on to the I.D.s while one officer ran a teletype check. Meanwhile, the other officer asked why Barna was nervous, sweating, and shaking, and whether Barna had any drugs or weapons. He lifted his hands above his head and said: "Go ahead and search me if you want." The resulting search revealed a cut straw, a small baggie of cocaine, and the remains of a marijuana cigarette in Barna's pockets. See id. The trial court denied Barna's motion to suppress the drug evidence found in Barna's possession. The incident began as a police-citizen consensual encounter but evolved into a seizure of Barna for Fourth-Amendment purposes. The State did not argue that it was a lawful investigatory *85 stop, and the Fourth District Court concluded it was not one. Because the investigatory stop was unlawful, the officer's subsequent search of Barna was unlawful too, absent the requisite standard of proof that Barna consented, and that his consent "was not a product of the unlawful police activity." Id. The district court reversed the order denying the motion to suppress and reversed Barna's judgment and sentence. See id.; Perko v. State, 874 So.2d 666 (Fla. 4th DCA 2004) (reversing judgment and sentence because defendant's consent to search of his person was obtained after he was "seized," and search was unlawful where defendant consented to officer's request to conduct search after officer obtained, but did not yet return, defendant's driver's license while another officer ran a warrant check).
Appellant's case is materially distinguishable from State v. Chang, 668 So.2d 207 (Fla. 1st DCA 1996), in which Officer Schwab observed Mr. Chang and two other males around 7:35 on a November evening, standing in front of a vacant house that was known as a very active site of drug trafficking. See id. at 208. As he drove toward the men, the officer saw another of the men throw a manila envelope to the ground. After discovering that the envelope contained marijuana, Officer Bisplinghof, who was patrolling with Officer Schwab, arrested the individual who had discarded it. Officer Schwab asked Chang and the other man what they were doing and whether they had identification. Chang presented his driver's license, and his name and the other man's name were "run" in the computer to determine if either man was wanted. The names came up clean. A check to determine whether a car parked in front of the vacant house had been reported stolen revealed that it was registered to Chang. Officer Schwab then returned Chang's driver's license to him. Officer Bisplinghof testified that when the other officer informed him that the parked car was registered to Chang, Officer Bisplinghof asked Chang for permission to search it, which Chang gave. The car search revealed a 9mm semiautomatic handgun under the driver's seat, and Chang was arrested and charged with possession of a firearm by a convicted felon. See id. Chang moved to suppress the handgun on the ground that it had been obtained during an illegal stop. The trial court agreed and granted the motion on the grounds that Chang was illegally detained when the officer checked his driver's license and vehicle registration, and that the State failed to meet its burden to prove that Chang's consent was voluntary. See id. at 208-09. Our court disagreed, finding no constitutional violation in Officer Schwab's approaching Chang, requesting identification, receiving his driver's license, and running a warrant check during what we characterized as a consensual police-citizen encounter. We reversed the suppression order and remanded Chang's case for trial. See id. at 209. The key distinction between Chang and the instant case is that Deputy Hunnicutt retained Appellant's I.D. card, effectively "seizing" him, even after the warrant check came back clean. Under those circumstances, Appellant's purported consent to the request for a personal search was not shown to be voluntary.
When the State relies on a defendant's consent to justify the lawfulness of a search, the State has the burden to prove that consent was freely and voluntarily given. See Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Appellant's purported consent to be searched was presumptively tainted and rendered involuntary by the illegal detention, absent "clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate *86 the taint of prior official illegal action." Norman v. State, 379 So.2d 643, 647 (Fla. 1980); State v. Campbell, 911 So.2d 192, 193 (Fla. 4th DCA 2005) (affirming order granting motion to suppress firearm, where defendant/motorist's consent to search vehicle was involuntary because it was given while police officers retained possession of driver's license after warrant check came back clean and defendant told officers there were no drugs or weapons in car), juris. accepted, Case No. SC05-1844 (Fla. Oct. 7, 2005); Bautista v. State, 902 So.2d 312, 314 (Fla. 2d DCA 2005); Taylor v. State, 658 So.2d 173, 173 (Fla. 5th DCA 1995). But for the involuntary personal search of Appellant, the deputy would not have discovered the drug contraband. The trial court misapplied the law to the facts in denying the dispositive motion to suppress the drug evidence. Accordingly, we REVERSE Appellant's conviction and sentence and REMAND with instructions to the trial court to enter a discharge order in accordance with Fernandez, 917 So.2d at 1024.
ALLEN and PADOVANO, JJ., concur.