937 So.2d 202 (2006)
Robert Hayden HUFFMAN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 1D05-3200.
District Court of Appeal of Florida, First District.
August 24, 2006.
*203 Nancy A. Daniels, Public Defender; David P. Gauldin, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General; Elizabeth F. Duffy, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
Robert H. Huffman, Jr., appeals his convictions for possession of a controlled substance and use or possession of drug paraphernalia, pursuant to his nolo contendere plea, which he entered after the trial court denied his motion to suppress. We affirm the judgment and sentence.
An information charged Huffman with possession of a controlled substance, cocaine *204 (Count One), and use or possession of drug paraphernalia (a "crack" pipe) with the intent to use it to introduce a controlled substance into the human body (Count Two). The offenses occurred on October 30, 2004. Huffman moved to suppress all evidence recovered as a result of his alleged "illegal seizure," specifically, one piece of "crack" cocaine and an alleged "pipe used for smoking crack." In support of his motion, Huffman cited, as pertinent to the issues, Coney v. State, 820 So.2d 1012 (Fla. 2d DCA 2002); State v. A.M., 788 So.2d 398 (Fla. 3d DCA 2001); Abdullah v. State, 745 So.2d 582 (Fla. 1st DCA 1999); and Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995). The sole witness at the suppression hearing was Lt. Jimmy Anderson, a member of the Chiefland Police Department. Finding that the officer had sufficient lawful grounds to act as he did, the trial court orally denied the motion to suppress and subsequently entered a written order. Huffman then entered a plea of nolo contendere to both charged offenses, expressly reserving the right to appeal the denial of his dispositive motion to suppress. See § 924.051(4) &.06(3), Fla. Stat. (2004); State v. Carr, 438 So.2d 826, 828 (Fla.1983). The factual basis of the plea is that on October 30, 2004, Huffman possessed cocaine and a "crack" pipe in Levy County. Accepting the plea, the trial court adjudicated Huffman guilty and sentenced him to 24 months' incarceration on Count One and to time served on Count Two.
The State presented the only witness at the suppression hearing. Lt. Jimmy Anderson, who had been with the Chiefland Police Department for more than eight years, testified that his routine duties included investigating for the Department, serving as evidence custodian, commanding the patrol division, and training within the Department. He had worked 2-1/2 years previously with the City of Cedar Key. Around 1:00 a.m. on October 30, 2004, Lt. Anderson was on patrol, wearing a uniform and driving an unmarked vehicle. At the intersection of 4th Avenue and 4th Street in Chiefland, the officer encountered Huffman on a bicycle. The police had received several complaints from citizens regarding that general area, where vehicles would stop and park in the middle of the road and drug dealers would approach and talk to the occupants of the vehicles. Increased patrolling had resulted in the ticketing of vehicles for stopping and standing in the roadway. The officer knew of at least two prior arrests for drug-dealing very near that same intersection. The block comprised 10 or so government houses and another eight houses on the other road.
Very early on the morning in question, Lt. Anderson approached the crossroads and saw a gold Lincoln Town Car stopped in the middle of the intersection. A man on a bicycle was at the driver's window. The officer recognized the car as belonging to a specifically named individual known to have prior arrests for drug-related offenses. In fact, Lt. Anderson had personally arrested the car's owner for possession of cocaine in the past. The officer did not know who was driving the car on the morning in question. As Lt. Anderson drove up behind the automobile, he observed the man on the bicycle hand something to the driver of the car, who, in turn, handed something back. The officer suspected a drug deal was occurring. Stepping out of his vehicle, the officer asked the man on the bicycle to come to him. However, the man turned away and tried to pedal off on the bicycle. As the Lincoln Town Car sped off, the officer chased the bicyclist, grabbed him, and pulled him off the bicycle. The officer then saw the man throw down a piece of "crack." Lt. Anderson testified that at the police academy, *205 he had learned drug identification. During his employment in Chiefland, he had attended several narcotics classes addressing drug identification, undercover street-level buys, and drug-trafficking. He had made at least 200 drug arrests.
On cross-examination, Lt. Anderson clarified (after reviewing his deposition) that he had seen the person in the automobile hand something to the man on the bicycle, Huffman. The witness had not seen Huffman give anything specific to the person in the car. When the officer approached the scene, he did not know or recognize Huffman. Lt. Anderson testified that he activated his blue lights as soon as he pulled behind the gold Lincoln Town Car. The bicyclist and the driver of the car did not know Lt. Anderson was a police officer until the blue lights were engaged. The officer exited his unmarked patrol vehicle. As Huffman pulled away from the Lincoln Town Car (which sped off) on his bicycle, trying to get away, Anderson grabbed him about 20 feet from where the car had been. The officer pursued the suspect in the belief that a drug deal had just occurred in "a known drug area" where prior drug-related arrests had been made. The citizen complaints about drug dealing in that area had not mentioned Huffman by name. The officer testified that another factor leading him to believe drugs were being dealt was the unusual presence of a white male, Huffman, in that part of town on a bicycle at that time of the early morning. The Lincoln Town Car was owned by a known drug dealer. Lt. Anderson testified it was commonly known among law-enforcement officers that white males would ride bicycles to that part of town to buy drugs. When he was asked how many drug-related arrests of bicyclists had been made, the witness testified he could not say exactly how many, but he mentioned one individual by name.
At the conclusion of the officer's testimony, the State argued that Huffman lacked standing to move to suppress the evidence because he had voluntarily discarded it and was not claiming ownership of the contraband or any other "property interest" in it. Defense counsel argued that Huffman did have standing to challenge the alleged "illegal seizure" and "illegal arrest" because the State was asserting the drug contraband was his. The trial court rejected the State's standing challenge.
Defense counsel argued that the State had failed to meet its burden to show that Lt. Anderson had probable cause when he arrested and searched Huffman. In support of suppressing the evidence, the defense relied on Coney and the other cases cited in its motion. Defense counsel argued that the officer's testimony that the car he saw was owned by a known drug dealer did not indicate who actually was driving on that morning and did not incriminate Huffman. The State argued that Walker v. State, 846 So.2d 643 (Fla. 2d DCA 2003); and Glover v. State, 843 So.2d 919 (Fla. 5th DCA 2003), support denial of the motion. The State asserted that the totality of the circumstances supported the officer's reasonable, well-founded belief that he had observed a drug deal.
"By state constitutional mandate in the conformity clause, we are to resolve Fourth-Amendment search and seizure issues in accordance with applicable United States Supreme Court precedents." Brye v. State, 927 So.2d 78, 80 (Fla. 1st DCA 2006); see Art. I, § 12, Fla. Const.; Holland v. State, 696 So.2d 757, 759 (Fla. 1997). The trial court's ruling on a motion to suppress is a mixed question of fact and law. See Brye, 927 So.2d at 80. Facts are reviewed for whether competent substantial evidence supports them, whereas the *206 trial court's application of a constitutional standard to the facts in a particular case is reviewed de novo. See United States v. Bajakajian, 524 U.S. 321, 336 n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998); Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (stating that findings of historical fact should be reviewed only for "clear error," with "due weight" to be accorded "to inferences drawn from those facts" by the trial court and by local law-enforcement officers); United States v. Harris, 928 F.2d 1113, 1115-16 (11th Cir.1991); Brye, 927 So.2d at 80-81. "A trial court's ruling on a motion to suppress is presumed correct." See Bonifay v. State, 626 So.2d 1310, 1312 (Fla.1993). "We must construe all the evidence, and reasonable inferences therefrom, in a manner most favorable to sustaining the trial court's ruling." Hines v. State, 737 So.2d 1182, 1184 (Fla. 1st DCA 1999); see Owen v. State, 560 So.2d 207, 211 (Fla.1990). Huffman has the burden to demonstrate prejudicial error pursuant to section 924.051(7), Florida Statutes (2004). See Hines, 737 So.2d at 1184.
A stop and/or brief detention of a person for investigatory purposes is permissible if an officer has a well-founded suspicion (supported by articulable facts) of criminal activity, even if the officer lacks probable cause. See § 901.151(2), Fla. Stat. (2004); United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Popple v. State, 626 So.2d 185, 186 (Fla.1993); Brye, 927 So.2d at 81-82; State v. Gonzalez, 682 So.2d 1168, 1170 (Fla. 3d DCA 1996). The totality of the circumstances must be taken into account when determining whether an officer had a reasonable suspicion of criminal activity to justify the investigatory stop. See Jenkins v. State, 685 So.2d 918, 920 (Fla. 1st DCA 1996). Factors that may be considered include "the time of day; the appearance and behavior of the suspect; the appearance and manner of operation of any vehicle involved; and anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge." See Grant v. State, 718 So.2d 238, 239 (Fla. 2d DCA 1998); Jenkins, 685 So.2d at 920. Other relevant factors are "the officer's narcotics experience; the reputation of the location for drive-up transactions; the extended period of the surveillance; and the history of previous multiple arrests from that site." Burnette, 658 So.2d at 1171. A suspect's flight from an officer is one element in the totality of the circumstances that can properly be considered to support an investigatory detention. See Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (stating that officer involved in investigation in area known for heavy narcotics trafficking had reasonable suspicion that defendant was involved in criminal activity and was justified in stopping defendant, after defendant's unprovoked headlong flight after seeing caravan of police vehicles converge upon neighborhood); Mitchell v. State, 787 So.2d 224, 228-29 (Fla. 2d DCA 2001) (holding that officer's seizure of marijuana and arrest of defendant were constitutionally justified where, upon officer's approach, defendant began to flee and thrust his hands toward his own pocket, causing justifiable concern for officer's safety; when officer properly responded to potential threat by grabbing him, defendant voluntarily abandoned drugs by throwing them over fence).
It was nearly 1:00 a.m. when the officer observed Huffman and the stopped automobile, the vehicle was in the middle of the intersection (a situation about which citizens had complained relating specifically to illicit drug transactions), and the officer *207 personally knew of past drive-up drug deals occurring in that immediate area involving men on bicycles. The officer recognized the gold Lincoln Town Car as belonging to a known drug offender whom the officer previously had arrested for cocaine possession. Also relevant are the officer's narcotics experience, the specific location's reputation for drive-up drug transactions, and the appearance of what looked like a hand-to-hand transaction. See Glover v. State, 843 So.2d 919 (Fla. 5th DCA 2003) (concluding that veteran narcotics officer had probable cause to conduct warrantless pat-down search of defendant for drugs, where officer observed defendant, a known drug dealer, from 10-15 yards away about to place unidentified object into hand of unknown female, defendant drew back his hand and placed object in his mouth when he saw officer, female then walked off, second officer found "crack" pipe in female's possession, and officer personally had arrested dozens of people for drug violations in that same open-field location); Burnette, 658 So.2d at 1171. "[I]t is not absolutely necessary for an officer to observe drugs or money changing hands in order to develop the founded suspicion necessary to temporarily detain a citizen to investigate whether a drug offense has been committed." Walker, 846 So.2d at 645; see Ford v. State, 783 So.2d 284, 286 (Fla. 2d DCA 2001); Burnette, 658 So.2d at 1171. Even though Lt. Anderson conceded he could not tell who was driving the Lincoln Town Car on the morning in question, the officer's knowledge that it was a known drug dealer's automobile was a proper factor among the total panoply of circumstances constituting his reasonable, articulable suspicion of criminal activity in progress.
The circumstances observed and known by the officer justified an investigatory Terry stop or detention when the officer activated his blue lights and exited his patrol vehicle. Because Lt. Anderson was justified in suspecting that Huffman was involved in criminal activity, the officer could properly "engage in further investigative efforts." Mitchell, 787 So.2d at 228. When Huffman tried to flee headlong from the officer during the lawful investigatory stop and temporary detention, the officer gave chase and pulled Huffman off his bicycle. The cocaine was voluntarily tossed loose in plain sight, and thus was abandoned, during Huffman's fall. Once the cocaine fell to the ground, the officer had probable cause to arrest Huffman, and the seizure of the cocaine and the search for paraphernalia were constitutionally justified. See id. at 228-29; Abdullah, 745 So.2d at 582 (affirming denial of motion to suppress bag of cannabis, which defendant had thrown into a tree as he fled the police, under theory of abandonment, where illegal stop and seizure was terminated once defendant ran off, so that bag thrown while fleeing was not discarded while defendant was "seized" within meaning of Fourth Amendment); State v. Worthington, 543 So.2d 1313 (Fla. 5th DCA 1989) (holding that bags of cocaine that fell out of shooting suspect's pockets when suspect resisted lawful detention and pat-down were admissible). Because Huffman established no legitimate ground for the contraband to be suppressed, the motion to suppress was properly denied. Cf. A.M., 788 So.2d at 398 (reversing suppression order because suspect was not "seized" by police officer, where suspect refused to stop and began to walk away after officer sought to question him, suspect dropped plastic bag containing marijuana before officer was able to grab him, and drugs were not fruit of an unlawful seizure and were admissible).
Huffman misplaces his reliance on Burnette, 658 So.2d at 1170, which arose from an investigation centered on a house where *208 the police had made 30-40 arrests in the past and where a known drug dealer, Mr. Hall, worked his trade. See id. During binocular surveillance of the house around 10:45 p.m. from a half-block away, an officer observed defendant Burnette approach the house in a car. Hall exited the house, and he and Burnette were seen engaged in a "hand to hand" transaction, although the officer did not actually see money or drugs transferred. The officer radioed his observations to two other officers, who stopped Burnette's car, searched him and his vehicle, found cocaine, and arrested him. See id. at 1170-71. Burnette asserted that his motion to suppress must be granted because the police never saw either money or drugs before stopping him. Acknowledging its reluctance to approve a stop and search, absent an officer's actual observation of an exchange of money or drugs in a drive-up situation, the Second District Court nevertheless noted the other factors within the totality of circumstances that gave rise to a well-founded or reasonable suspicion that Burnette had engaged in illegal activity. Given the officer's experience, training, and knowledge, those circumstances justified an investigatory stop. However, nothing in the Burnette record indicated that anything further occurred after the stop, and before the search, that would have provided probable cause for an arrest and search incident to arrest, nor did the trial judge make a finding of probable cause to arrest. On that record, the district court reversed and remanded for further proceedings. See id. at 1171. In contrast, the instant facts gave Lt. Anderson a reasonable, well-founded suspicion that he was observing an illegal drug transaction, a circumstance that warranted his performing a temporary investigatory stop or detention under Terry. As the officer approached him, Huffman tried to escape, and when the officer grabbed him while in pursuit, Huffman threw down the "crack." Unlike the officers in Burnette, Lt. Anderson then had probable cause to make an arrest for drug possession and to perform a search.
The State correctly contends that Coney, 820 So.2d at 1012, is materially distinguishable on its facts and is not dispositive of the case at bar. The police in Coney were conducting surveillance in an area where many drug arrests had previously been made. They observed Coney approach on a bicycle and place his closed hand into a car. The police could not see what was in his hand, but as the car left, they saw Coney holding money. From their training and experience, the officers believed they had seen a drug transaction. When one of the officers approached Coney about a block away from the suspected transaction, he noticed that Coney had an object in his mouth, and he directed Coney to spit it out. Coney complied, and out came a "nickel size" bag of marijuana. Coney was arrested and charged with possession of cannabis with the intent to sell or deliver. At the hearing challenging the legality of the search and seizure of Coney, the officer acknowledged that before Coney spit out the bag, he did not know what was in Coney's mouth. While conceding the object could have been candy or a mint, the officer testified that the mouth is a good place to hide drugs. The trial court denied Coney's motion to suppress. See id. at 1013. The Second District Court concluded that the officers' observations and the surrounding circumstances provided a legitimate ground to conduct an investigatory stop of Coney. However, as in Burnette, the officers in Coney lacked probable cause to search the suspect, specifically, to search Coney's mouth or order him to expectorate its contents. The panel noted several significant factors to support this conclusion: the officers had not seen what was in Coney's hand when he *209 reached into the car, they had not seen what was in Coney's mouth before he spit out the object at the officer's command, and they had not observed Coney involved in more than one transaction. Both officers admitted that before Coney spit out the marijuana, they lacked probable cause to arrest him. See id. at 1014. Thus, Coney's motion to suppress should have been granted. See id. at 1015.
The trial court correctly denied Huffman's motion to suppress. His judgment and sentence are AFFIRMED.
WOLF and WEBSTER, JJ., concur.