BROWNING, J.
 

 Paul Stanley Panter pled nolo contende-re to charges of possession of a controlled substance (cocaine) and possession of drug paraphernalia (syringes, a spoon, and/or a smoking device), reserving his right to appeal the denial of his dispositive motion to suppress physical evidence and his admissions as the products of an illegal search. Because the State failed to prove that the deputy had a reasonable, well-founded, particularized suspicion of criminal activity to justify an investigatory stop, the trial court erred as a matter of law in denying the motion to suppress.
 
 See Walker v. State,
 
 846 So.2d 643 (Fla. 2d DCA 2003);
 
 Messer v. State,
 
 609 So.2d 164 (Fla. 2d DCA 1992) (concluding that officer lacked reasonable suspicion to stop defendant’s
 
 *1264
 
 truck, even though officer had observed a person approach defendant as he sat in a truck in the driveway and the person appeared to pass something to defendant, but officer saw only arm movement and could not identify any object exchanged);
 
 Stanton v. State,
 
 576 So.2d 925 (Fla. 1st DCA 1991);
 
 Dames v. State,
 
 566 So.2d 51 (Fla. 1st DCA 1990);
 
 Peabody v. State,
 
 556 So.2d 826 (Fla. 2d DCA 1990). Thus, we are constrained to reverse Panter’s convictions and sentences and remand with directions to grant the motion to suppress and to discharge him for these offenses.
 

 The following facts were adduced at the suppression hearing. Deputy Wiggins testified that on August 2, 2007, he was parked on routine “neighborhood watch” patrol at the intersection of Pace and Mallory Streets around 3:00-3:30 p.m. when he observed two unknown men in a white van pull into the driveway of an address on Mallory. The deputy, who had been with the Escambia County Sheriffs Office for fewer than two years, knew of that neighborhood as a high-crime area where drugs are used. Viewing the scene from four or five city blocks away, Deputy Wiggins saw an unknown male exit a house, approach the driver’s side of the van, reach inside the vehicle, and engage in “a hand-to-hand transaction” of an unknown nature. The deputy did not actually see cash or drugs or anything else pass between the man standing outside and the driver during the episode. Relying on his training and experience, the deputy thought the transaction was suspicious because the man had come out of one of three “Habitat” houses in that block that have a history of narcotics sales. Deputy Wiggins testified there is “a certain way that they do hand-to-hand exchanges,” but he did not elaborate on what it is.
 

 As the van drove off, the deputy followed it about six blocks until the vehicle parked at Beer City, a convenience store on Pace. Deputy Wiggins parked his patrol vehicle a car length or two behind the van so as not to block the van from leaving. He did not observe any traffic infraction; he denied having used his blue lights when he initially made contact with the parked van in the Beer City parking lot.
 

 When the driver (whom the deputy identified in court as Panter) exited the van, Deputy Wiggins got out of his patrol car and made contact with him. When the deputy asked if he had some identification, Panter answered affirmatively. When the deputy sought permission to search him, Panter gave oral consent. Deputy Wiggins did not find any contraband on Pan-ter’s person. The deputy then asked for permission to search the passenger, Mr. Meyers, who gave oral consent. Warrants checks on the two men came back negative. When Deputy Wiggins asked for consent to search the van, the registered owner, Meyers, said “no.” Deputy Wiggins informed Panter and Meyers that he would have to call the K-9 unit. That is when he radioed for assistance from Deputies Levenseller and Crossley, the latter of whom was a canine handler.
 

 Three to five minutes later, Deputy Crossley and the police dog arrived. After the dog was released from the patrol vehicle and “alerted” on the van, Deputy Le-venseller searched the van and found a black nylon pouch containing syringes and cocaine. Panter and the passenger were taken into custody and given their rights pursuant to
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), after which Panter voluntarily admitted the nylon pouch was his. The testimony of the other two deputies is consistent with Deputy Wiggins’, except for an immaterial factual conflict as to whether the blue lights were engaged.
 

 The prosecutor argued that Deputy Wiggins’ observation of the hand-to-hand
 
 *1265
 
 movement outside a known narcotics house created a reasonable, founded suspicion supported by articulable facts that criminal activity was afoot, justifying a temporary detention in the Beer City parking lot to investigate whether a drug offense had occurred.
 
 See
 
 § 901.151(2), Fla. Stat. (2007) (“Stop and Frisk Law”);
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989);
 
 Terry v. Ohio,
 
 392 U.S. 1, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993).
 

 The defense asserted that Deputy Wiggins lacked a founded suspicion of criminal activity to justify an investigatory stop and detention of Panter and his passenger, both of whom were previously unknown to the deputy. Alternatively, once the identification and warrants checks came back clear and Meyers refused the request to search the van, the police no longer had any lawful basis to detain the men. Nevertheless, Deputy Wiggins informed Pan-ter and Meyers that he had to call the K-9 unit. Defense counsel argued that under these circumstances, where the K-9 unit had been called, and irrespective of whether the blue lights were on, the men were “seized” for Fourth-Amendment purposes, so that a reasonable person would not have felt free to end the encounter and leave.
 
 See Popple,
 
 626 So.2d at 188. In fact, the environment was such that any reasonable person would have feared that if he or she left, a charge of obstructing justice might be brought. On that ground, the defense contended that the prolonged detention, including the search of the van, was illegal, so that the fruits of the improper detention and search should have been suppressed.
 
 See Dames,
 
 566 So.2d at 52.
 

 The trial judge denied the motion to suppress, concluding that Deputy Wiggins had a reasonable suspicion that the hand-to-hand transaction involved criminal activity, that he had a lawful basis to perform a brief investigatory stop, and that Panter and Meyers were free to leave the site even after the deputy informed them that he had to call the K-9 unit. Judge Terrell accepted Panter’s plea of nolo contendere to the charges and placed him on probation.
 

 “The trial court’s ruling on a motion to suppress is a mixed question of law and fact.”
 
 Brye v. State,
 
 927 So.2d 78, 80 (Fla. 1st DCA 2006). We review the trial court’s ruling denying a motion to suppress to determine whether competent, substantial evidence supports the factual findings.
 
 See Huffman v. State,
 
 937 So.2d 202, 205 (Fla. 1st DCA 2006).
 

 [M]ixed questions of law and fact that ultimately determine constitutional rights are to be reviewed by the appellate courts applying a two-step approach. Deference is to be shown to the trial court on questions of historical fact, but
 
 de novo
 
 review of the application of a constitutional standard to the facts in a particular case is proper.
 

 Brye,
 
 927 So.2d at 80-81;
 
 see United States v. Bajakajian,
 
 524 U.S. 321, 336 n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998);
 
 Ornelas v. United States,
 
 517 U.S. 690, 696-99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996);
 
 Huffman,
 
 937 So.2d at 205-06. We must view the evidence and all reasonable deductions and inferences in a manner most favorable to sustaining the ruling.
 
 See Pagan v. State,
 
 830 So.2d 792, 806 (Fla.2002). In Florida, when ruling on search and seizure issues, courts are required by the conformity clause in article I, section 12 of the Florida Constitution to follow the applicable United States Supreme Court precedents.
 
 See Holland v. State,
 
 696 So.2d 757, 759 (Fla.1997);
 
 Brye,
 
 927 So.2d at 80. In evaluating the legality of the officers’ actions, we must examine the facts available to the officers and the totality of the circumstances to determine
 
 *1266
 
 whether they had a particularized, objective basis to suspect criminal activity.
 
 See United States v. Arvizu,
 
 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002);
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983);
 
 Hilton v. State,
 
 961 So.2d 284, 294 (Fla.2007).
 

 After review, we conclude that Panter’s position is well-founded. The deputy did not have a reasonable, well-founded, particularized suspicion of criminal activity to justify an investigatory stop.
 
 See Terry,
 
 392 U.S. at 30-31, 88 S.Ct. 1868. Because Deputy Wiggins was not justified in conducting the investigatory stop, the trial court erred in denying the dispositive motion to suppress. We REVERSE the judgment and sentence and REMAND WITH DIRECTIONS to the trial court to grant the motion to suppress and to discharge Panter for these offenses.
 

 WOLF and BENTON, JJ., concur.