CASANUEVA, Judge.
 

 The State of Florida appeals the trial court’s order suppressing a law enforcement officer’s seizure of illegal drugs and
 
 *375
 
 drug paraphernalia. Because the facts of this case mirror
 
 Illinois v. Wardlow,
 
 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), we conclude that the deputy who stopped appellee Brian Bell did have reasonable suspicion to do so, contrary to the circuit court’s finding. We reverse.
 

 Facts
 

 The night of Mr. Bell’s arrest, an anonymous caller to the sheriffs department reported drug activity at a location that had been the subject of twenty to thirty anonymous calls in the previous month. Similar to previous nights, the caller reported a group of ten to twelve African-American males huddled together in front of the apartment building at 3 a.m. As soon as the responding law enforcement cruisers turned the corner to approach the building, the group scattered at a run, some fleeing on foot, others trying to reach their cars to leave.
 

 Deputy Wells testified that she observed Mr. Bell in the center of the huddled group; in her experience, this fact suggested that he was the dealer. As the officers approached, he fled to his nearby parked automobile and hopped into it. Because he was nearest to her, the deputy stopped her cruiser behind his automobile. As she approached his car on foot, she shined her flashlight inside the vehicle but was unable to see anything or anybody because of the extremely dark tint on the windows. The deputy then ordered Mr. Bell to exit the vehicle. When he opened his door, the deputy observed in the door pocket a white or clear bag containing several rocks that subsequently field-tested positive for cocaine. Mr. Bell was then arrested. The State charged him with one count of possession of a controlled substance and one count of possession of drug paraphernalia.
 

 Based upon what he contended to be an illegal stop, Mr. Bell filed a motion to suppress. At the hearing on this motion, Deputy Wells and Mr. Bell testified; their accounts differed. The circuit court announced that it would grant the motion to suppress because it found that the stop was illegal as not being supported by probable cause. Despite the circuit court’s misstatement of the standard — reasonable suspicion is the standard
 
 [1]
 
 for stopping a person — the evidence showed that the deputy had reasonable suspicion to stop Mr. Bell and request that he exit the car.
 
 [2]
 

 Analysis
 

 We review an order on a motion to suppress by giving deference to the circuit court’s findings of fact unless they are clearly erroneous, but we review de novo the application of the law to the facts.
 
 Ornelas v. United States,
 
 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Because this is a suppression issue, we must apply the Fourth Amendment of the United States Constitution as interpreted by the United States Supreme Court. Art. I, § 12, Fla. Const.;
 
 Holland v. State,
 
 696 So.2d 757 (Fla.1997). The facts upon which the circuit court based its order are not in dispute. Deputy Wells’ and Mr. Bell’s accounts differed but not in a significant, material manner regarding the events leading up to the stop.
 

 Wardlow,
 
 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570, is the controlling precedent and dictates the result here. Because the circumstances of
 
 Wardlow
 
 and the instant case are almost indistinguishable, we set forth the pertinent passage of
 
 Ward-low:
 

 
 *376
 
 Nolan and Harvey were among eight officers in a four-ear caravan that was converging on an area known for heavy narcotics trafficking, and the officers anticipated encountering a large number of people in the area, including drug customers and individuals serving as lookouts. It was in this context that Officer Nolan decided to investigate Wardlow after observing him flee. An individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a “high crime area” among the relevant contextual considerations in a
 
 Terry
 
 analysis.
 

 In this case, moreover, it was not merely respondent’s presence in an area of heavy narcotics trafficking that aroused the officers’ suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer’s conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further.
 

 Id.
 
 at 124-25, 120 S.Ct. 673 (record and case citations omitted).
 

 Like Mr. Wardlow, Mr. Bell was in an area of expected criminal activity and fled, unprovoked, upon seeing the deputies approach. If anything, Mr. Bell’s circumstances were more suspicious than Mr. Wardlow’s. Mr. Wardlow was standing next to a building, apparently by himself around noon, holding an opaque bag. Mr. Bell was seen in the center of a huddled group at 3 a.m. The Supreme Court found Mr. Wardlow’s circumstances sufficient to ground a reasonable suspicion allowing law enforcement to investigate further, and so must we in Mr. Bell’s case.
 

 Conclusion
 

 This court has previously noted that “[i]n
 
 Wardlow
 
 the Supreme Court reiterated that, consistent with
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may conduct a brief investigatory stop when the officer possesses ‘a reasonable, articulable suspicion that criminal activity is afoot.’ ”
 
 Mitchell v. State,
 
 787 So.2d 224, 228 (Fla. 2d DCA 2001) (quoting
 
 Wardlow,
 
 528 U.S. at 123, 120 S.Ct. 673). Here the knowledge that this area was frequently and recently being used as the scene of drug transactions, joined with Mr. Bell’s unprovoked effort to depart the scene upon the deputies’ arrival, brings this case within the parameters of permissible law enforcement conduct under
 
 Wardlow.
 

 Order of suppression reversed, and case remanded for further proceedings.
 

 NORTHCUTT, C.J., and DAVIS, J., Concur.
 

 [1]
 

 .
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [2]
 

 . Asking Mr. Bell to exit the car for the deputy’s own safety and so she could investigate further was also reasonable under
 
 Pennsylvania
 
 v.
 
 Mimms,
 
 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).